**Charlotte AUSTIN, Appellant,**

v.

**Michael Lee WEEMS, Appellee.**

No. 01–09–00127–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 24, 2011.

Michael M. Phillips, Michael M. Phillips Law Firm, P.C., Angleton, for Appellant.

Randy L. Fairless, Johanson & Fairless, L.L.P., Sugar Land, U. Lawrence Boze, U. Lawrence Boze & Associates, P.C., Houston, for Appellee.

Panel consists of Justices JENNINGS, HIGLEY, and BROWN.

## OPINION

HARVEY BROWN, Justice.

Charlotte Austin sued Michael Weems for the wrongful death of her husband, Earvin Austin, arising from an auto-pedestrian accident. Mrs. Austin appeals the trial court's judgment on the jury's finding of no negligence and contends that the trial court erred in denying her motion to exclude the point-of-impact opinion testimony of Deputy Henry K. Jordan and overruling her trial objections to his testimony. In addition to his oral testimony, Deputy Jordan's point-of-impact opinion was contained in five places in three exhibits offered at trial. Mrs. Austin did not timely object to three instances in those exhibits where Deputy Jordan expressed his opinion on point of impact. The denial of a motion to exclude out of the presence of the jury may make it unnecessary to object to documents containing the same opinion in front of the jury. But, to do so, the motion must clearly address not only the opinion, but each of the different ways the opinion will be presented to the jury through documents. Mrs. Austin's motion to exclude only addressed the expert's opinion in his testimony and two of the five instances his opinion was expressed in the exhibits. She was required to object to each part of the exhibits that contained his opinion to preserve error on appeal.

Mrs. Austin also contends on appeal that the jury's finding was against the great weight and preponderance of the evidence and the trial court erred in denying her motion for new trial since Weems's counsel made an improper jury argument. We overrule her contentions and affirm.

## Background

On the morning of December 17, 1995, Earvin Austin left the Big Tree Lounge a little before 2:00 a.m. He parked his pickup truck across from the Lounge on the south-bound shoulder of State Highway 36—a two-lane road with a 55 mile per hour speed limit—and was going to cross the highway by walking east-bound on foot back into the Lounge's parking lot. Michael Weems, traveling north, struck and killed Austin in the highway.

Charlotte Austin sued Weems for wrongful death. During the trial 13 years after the accident, the jury heard conflicting testimony regarding whether Weems swerved into the lane for opposing traffic, the south lane, or remained in his own lane, the north lane. In other words, testimony differed as to whether Mr. Austin had already walked more than halfway across the road or was on his side of the road and was preparing to cross. More specifically, there was a swearing match on whether Mr. Austin walked into the north-bound lane, where Weems had the right of

way, or was still on his own side of the road, near his truck parked on the south side.

The location of the point of impact was the primary liability issue at trial. If Weems were driving on the wrong side of the road and Mr. Austin were near his truck, a jury would likely find some fault for the accident rested with Weems. On the other hand, if Weems were on his own side of the road, and Mr. Austin were walking on the wrong side of the road, a jury would likely find that some fault for the accident rested with Mr. Austin.

Mrs. Austin called eye-witnesses Gervaise Summers, James Marshall, Robert Smith, and Brigette Henry to testify at trial in support of her claim that Weems hit Mr. Austin in the south-bound lane. Summers and Marshall testified that they saw the point of impact in the south-bound lane. Henry, a passenger in Mr. Austin's truck parked on the side of the road in the south lane, testified that the truck shook when Weems's car passed. Smith testified at trial that he never saw the impact but he did see Weems swerve into the south lane. In his deposition, however, he testified that he saw the accident and Weems was in the north lane, which corresponds with his statement to police that Mr. Austin walked in front of the car and Weems could do nothing to stop the accident. Summers's and Marshall's trial testimony also contradicted their earlier deposition testimony.[1]

Weems relied primarily on his own testimony and the testimony of Deputy Henry K. Jordan with the Brazoria County Sheriff's Department. Weems testified that he struck Mr. Austin in the north-bound lane,

but that he never saw Mr. Austin until after impact. When Officer Jordan arrived on the scene about ten minutes after the accident, a firefighter was directing traffic and the lanes had been blocked. Witnesses disputed how many cars, if any, had passed through the accident scene. Deputy Jordan documented the placement of the debris in the north-bound lane, took some measurements, and obtained witness statements at the scene and in the following days.

Over ten months before trial, Mrs. Austin filed a motion to exclude the opinion testimony of Deputy Jordan arguing that he was not qualified to testify as an expert regarding the point of impact, causation, or fault and that his opinion on those subjects was unreliable. The motion was directed at his testimony, not at his accident report, though the motion objects to Deputy Jordan's "opinions" on point of impact and the factual background referred to two statements in the report.[2] The trial court addressed the motion at the close of Mrs. Austin's evidence out of the presence of the jury. There was no discussion during the hearing of the five instances in his accident report in which Deputy Jordan opined on the point of impact, but there were again some general objections to his point-of-impact opinions.

During that hearing, Deputy Jordan testified that he had twenty years of law enforcement experience and had investigated hundreds of accidents. He admitted, however, that he had no training in accident reconstruction or physics and that the accident at issue was the only auto-pedestrian fatality he had ever investigated. He did not consider himself to be an

1. All the eye-witness depositions were taken within five years of the accident.

2. Different parts of Deputy Jordan's accident report were admitted as three separate exhib-

its at various times at trial. For ease and clarity, the parts will be referred to as three separate reports or as the diagram, the standard report, and the narrative report.

expert in accident reconstruction and point of impact. He testified—based on his "training, knowledge, skill, experience, common sense, and observations"—that he believed the point of impact was in the north lane where Weems had the right-of-way. He stated he did not need to reconstruct the accident completely to determine the point of impact. His opinion rather was based primarily on the location of the debris and the witnesses' statements. The trial court denied the motion to exclude expert testimony and ruled that Deputy Jordan's testimony was rationally based on perception and "the jury was equally well positioned to draw inferences from the data presented."

Deputy Jordan proceeded to testify before the jury as to point of impact and his opinion that Mr. Austin was at fault. Weems also offered into evidence three components of Deputy Jordan's accident report—his diagram of the scene, a standard report, and a narrative report of the accident. Weems first offered the diagram of the scene, which indicated the placement of the cars, debris, and point of impact. After the trial court admitted the diagram, Mrs. Austin objected to the point-of-impact opinion shown on the drawing and argued Weems failed to show the proper predicate for the opinion. The trial court overruled the objection as untimely.

Weems later offered Deputy Jordan's standard report into evidence. His standard report contained, in one section, his conclusion that Austin's failure to yield the right of way was a contributing factor to the accident[3] and, in another section, two sentences that the point of impact oc-

curred when Weems struck Mr. Austin in the north-bound lane. Mrs. Austin generally objected to opinions in the standard report and specifically identified the right-of-way statement. The court sustained the objection to the failure to yield the right-of-way statement and, after redactions, admitted the standard report.

Weems later offered the narrative portion of Deputy Jordan's police report into evidence through the records custodian for the Brazoria County Sheriff's Department. The narrative report stated,

> Debris near the center and northeast of the center of the road indicated that as possibly the point of impact. Evidence at the scene indicated that victim may have been standing or walking approximately 2 ft. east of the center line of the roadway . . . There was no evidence visible to RO to indicate that vehicle #1 was out of the proper lane or traveling at a high rate of speed.

Mrs. Austin objected to the narrative as including "double hearsay."[4] The trial court then overruled the objection and admitted the narrative into evidence.

During final argument, Weems attacked the credibility of one of Mrs. Austin's eyewitnesses, Robert Smith, for changing his testimony. Additionally, according to Mrs. Austin, Weems's counsel made a gesture implying that money had influenced Smith's testimony. Mrs. Austin made no objection to the argument, nor did she advise the court of the gesture immediately after the argument. The jury found that Weems was not negligent in causing

---

3. At the bottom of the police report was a section for the investigating officer to indicate factors and conditions that did contribute and may have contributed to the accident. Below this is a standardized list of 72 factors that the officer may choose.

4. Mrs. Austin mentioned the word "opinion" in her objection, but limited her objection to hearsay and never raised Texas Rule of Evidence 701 or 702.

the accident. The trial court entered judgment on the verdict.

Mrs. Austin filed a motion for new trial raising factual sufficiency of the evidence and improper jury argument. She amended her motion twice. In her second amended motion filed three months after the verdict, Mrs. Austin asserted, for the first time, that Weems's counsel made a hand gesture during his argument indicating money and thereby implied that Smith had been bribed to change his testimony. She attached an affidavit from her counsel to support the hand gesture allegation. Weems responded, without any sworn evidence attached, that his counsel did not remember making the gesture, but even if he had, the implication would have been that the witness wanted monetary compensation for Mr. Austin's family, not an implied accusation of bribery. The trial court denied Mrs. Austin's motion for new trial and she filed a timely appeal.

### Opinion Testimony

Mrs. Austin argues the trial court erred in allowing Deputy Jordan's opinion testimony on point of impact because he was not qualified to give expert testimony under Texas Rule of Evidence 702.[5] Weems responds that Mrs. Austin failed to preserve this issue for appeal because she did not object to documentary evidence containing Deputy Jordan's opinion. In the alternative, Weems argues trial court properly admitted Deputy Jordan's opinion because he qualified as a lay opinion witness under Rule 701. *See* TEX.R. EVID. 701.

### I. Preservation of Error

 To preserve error for appellate review the complaining party must timely and specifically object to the evidence and obtain a ruling. *See* TEX.R.APP. P. 33.1(a); *see also* TEX.R. EVID. 103(a)(1). "Error is waived if the complaining party allows the evidence to be introduced without objection." *Bay Area Healthcare Grp. Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex.2007). Additionally, any error in the admission of evidence is waived if the objecting party subsequently permits the same or similar evidence to be introduced without objection. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex.2004). Thus, a party fails to preserve error if it does not object to the same or similar evidence that is offered by the opposing party. *See Marin v. IESI TX Corp.*, 317 S.W.3d 314, 324 (Tex.App.-Houston [1st Dist.] 2010, pet. filed).

### II. Mrs. Austin's Motion to Exclude

Mrs. Austin filed a pretrial motion to exclude Deputy Jordan's opinion on point of impact by challenging both his qualifications and the reliability of his opinion on point of impact. Mrs. Austin, therefore, did not need to raise her objection to his testimony in front of the jury. *See* TEX.R. EVID. 103(a)(1); *see also Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 409–10 (Tex.1998) (holding that objection "before trial or when the evidence is offered" is necessary to preserve reliability challenge to expert testimony). After a hearing out of the presence of the jury, the trial court denied the motion and explained that the testimony was admissible as lay witness testimony under Rule 701.

---

**5.** Mrs. Austin does not challenge the trial court's ruling that Jordan could testify regarding the fault of the parties. When Weems asked Deputy Jordan if he had formed an opinion as to fault based on his skill, knowledge, training, experience, and investigation, he testified, "The pedestrian was at fault for walking in or standing in the roadway." In her brief to this court, Mrs. Austin does not address Deputy Jordan's opinion on fault.

■ A motion to exclude, in effect, accomplishes the same thing as a running objection: it eliminates the need to repeat the objection each time evidence is admitted on a topic. *See Volkswagen of Am.,* 159 S.W.3d at 907. A running objection reaches different types of evidence only if the objecting party specifically identifies the part of the evidence that is inadmissible and each source of that evidence. *Volkswagen of Am.,* 159 S.W.3d at 907 (stating that to preserve error by running objection, objecting party must identify both "the source of the objectionable evidence" and its "specific subject matter" and that error was preserved because objection identified "the ways" that evidence would be presented to the jury). Rule 103(a)(1) permits a ruling denying a motion to exclude testimony outside the presence of the jury to preserve error without the necessity of repeating the same objections, but only for "such evidence" that is the subject of the motion.

### A. Breadth of the Motion to Exclude

■ We look to the motion to determine its subject matter and the "source" or the "ways" that the objectionable evidence would be presented to the jury. *See Volkswagen of Am.,* 159 S.W.3d at 907. The motion did not identify for the trial court each specific instance of Deputy Jordan's opinion included in the police report through the diagram, the standard report, and the narrative report. The following five iterations of Deputy Jordan's opinion were admitted through various portions of his police report: (1) "POI" indicated on the diagram; (2) the standard report's statement that, *"Victim either walked onto or was standing in the North bound lane;"* (3) the standard report's statement that, "POI APPROX. 2(ft) East of center

line;" (4) the narrative report's statement that, "Debris near the center and northeast of the center of the road indicated that as possibly the point of impact;" and (5) the narrative report's statement that, *"Evidence at the scene indicated that victim may have been standing or walking approximately 2 ft. east of the center line of the roadway."* (emphasis added). Mrs. Austin only raised the italicized portions in her motion to exclude.[6] The motion does not address the "POI" notation in the diagram or the additional point-of-impact opinion statements in the standard and narrative reports. We conclude, therefore, that the motion preserved error for Deputy Jordan's trial testimony and the admission of the two identified statements in the reports, but did not preserve error for the three statements that were not identified.

We are mindful that one of our sister courts of appeal has held that the trial court's denial of a pretrial motion to exclude was sufficient to preserve error without an additional trial objection for the admission of not only numerous accident reports written by different officers but also a police officer's testimony discussing the same accidents. *Huckaby v. A.G. Perry & Son, Inc.,* 20 S.W.3d 194, 204 (Tex. App.-Texarkana 2000, pet. denied). The breadth of the motion in *Huckaby* differs from the breadth of this motion. The court there reasoned that the motion "was not so narrowly drawn" as to apply only to documentary evidence and not to testimony by a police officer that discussed each of the same accidents. *Id.* The court quoted a number of instances in the motion where the movant requested exclusion of evidence of the prior and subsequent accidents. The motion in *Huckaby* was also titled "Plaintiffs' Objections, and Motion,

---

6. Mrs. Austin stated the italicized portions in the factual summary of her motion to exclude, though at no time in her argument section.

Reading the motion broadly, we believe she preserved error as to the two statements indicated in her motion.

to Exclude Evidence." In contrast, Mrs. Austin's motion by its title is directed at testimony. While the motion globally makes reference to Deputy Jordan's opinions, the opinions that are the focus of the motion are the opinions as expressed in Deputy Jordan's testimony, and the prayer sought the exclusion of only his testimony on point of impact. More importantly, her motion does not specifically identify each objectionable portion of Deputy Jordan's accident report.

## B. Waiver in Light of the Motion to Exclude

■ We next examine the effect of a motion to exclude that covers testimony but does not cover each expression of the same opinion in exhibits offered at trial. Mrs. Austin's counsel conceded to the trial court that parts of the accident report were admissible. It was Mrs. Austin's burden, therefore, to identify the specific portions of each report that constituted opinion testimony on the point of impact. *See Jones v. State,* 843 S.W.2d 487, 492 (Tex.Crim.App.1992);[7] *Lawrence v. Geico Gen. Ins. Co.,* No. 01–07–00873–CV, 2009 WL 1886177, at *5 (Tex.App.-Houston [1st Dist.] July 2, 2009, no pet.); *Gen. Motors Corp. v. Harper,* 61 S.W.3d 118, 126 (Tex. App.-Eastland 2001, pet. denied); *see also* 1 Steven Goode et al., *Texas Practice Series: Guide to the Texas Rules of Evidence* § 103.2 (3d ed.2002) (stating if an objection

is made to the entirety of the document which does "not point out precisely which parts were inadmissible," it is "properly overruled if any part of the offer was admissible.").[8] This she failed to do.

This rule has been applied by this court to require a party to identify any specific objectionable portions of a police report. *Lawrence,* 2009 WL 1886177, at *5–6. In *Lawrence,* the plaintiff objected to the inclusion of expert opinions in a police report and specifically identified the portion of the report that identified two contributing factors to the accident. Much like the trial court here, the *Lawrence* court sustained that objection to that part of the report. On appeal, the plaintiff challenged the admissibility of a diagram of the scene and to the opinions expressed in the report regarding whether a vehicle was legally parked, the direction of travel, and the position of the vehicles at the time of the collision. We noted the general rule that an "objection to evidence as a whole, which does not point out specifically the portion objected to, is properly overruled if any part of that evidence is admissible." *Id.* at *5. Applying that rule, we then held that the trial court properly overruled the objection because the report contained admissible non-opinion evidence and the plaintiff did not specifically identify the opinions that were challenged on appeal. *Id.* at *6. The same is true here: the

---

7. The court in *Jones* explained that the trial court has no obligation to "sort through challenged evidence in order to segregate the admissible from the excludable ... If evidence is offered and challenged which contains [both admissible and inadmissible parts] the trial court may safely admit it all or exclude it all, and the losing party, no matter who he is, will be made to suffer on appeal the consequences of his insufficiently specific objection." *Jones v. State,* 843 S.W.2d 487, 492 (Tex.Crim.App.1992).

8. This rule has been repeatedly utilized to find any error was waived concerning summary judgment evidence. *See, e.g., Columbia Rio Grande Reg'l Hosp. v. Stover,* 17 S.W.3d 387, 396 (Tex.App.-Corpus Christi 2000, no pet.) (stating that objections to four exhibits on basis of hearsay did not specifically identify objectionable hearsay statements and did not preserve error); *Moulton v. Vaughn,* 982 S.W.2d 107, 110 (Tex.App.-Houston [1st Dist.] 1998, pet. denied) (noting that objection directed to affidavit as whole, which does not point out which part is objectionable, preserves nothing for review).

plaintiff failed to identify each of the objectionable portions of the police report.

When the remaining portions of Deputy Jordan's accident report were admitted into evidence without a specific objection, Mrs. Austin allowed the same or similar opinion as Deputy Jordan's oral testimony to be admitted to the jury, making the objected-to evidence cumulative of the unobjected-to evidence. Any error as to the earlier objected-to evidence, therefore, was not preserved. *See Marin*, 317 S.W.3d at 324; *see also Allstar Nat. Ins. Agency v. Johnson*, No. 01–09–00322–CV, 2010 WL 2991058, at *3–4 (Tex.App.-Houston [1st Dist.] July 29, 2010, no pet.) (holding error not preserved where objecting party did not renew hearsay objection to document when witness testified to contents of document).

Unlike the *Huckaby* court, we do not find the potential for contradictory rulings by the trial court a persuasive reason for rejecting the general rule that a party must consistently object to the same evidence. 20 S.W.3d at 204 ("it would be contradictory to exclude written accident reports and then allow a witness to testify on the information in those reports"). The fact that it would be contradictory for a trial court to admit evidence in one form at one point in the trial and exclude the same or similar evidence in another form at another point has not stopped courts from adopting the well-established rule requiring a party to object to the same evidence offered later during the trial. *Richardson v. Green*, 677 S.W.2d 497, 501 (Tex.1984); *Slayden v. Palmo*, 108 Tex. 413, 194 S.W. 1103, 1104 (Tex.1917). For example, it would be contradictory for a court to sustain a hearsay objection to testimony by a witness concerning a conversation after earlier admitting testimony on the same conversation by a different witness over objection (assuming no new arguments are raised). But courts still require the objection to be repeated in order to preserve error.

This case demonstrates that the potential for contradictory rulings is not a reason for extending an objection to statements that are never called to the trial court's attention. A trial court may sustain objections to specific portions of an exhibit even when that court has ruled already on the admissibility of other evidence on the same topic. For example, a trial court may refuse to admit an exhibit that contains opinions similar to opinions already admitted under other rules of evidence, including that the exhibit may be cumulative of the testimony or admitting the opinion in written form gives it greater weight. Or the trial court may change its mind about the admissibility of the evidence after seeing how counsel has already used the testimony before the jury and will further use the exhibit. *See Clark v. Trailways, Inc.*, 774 S.W.2d 644, 647 (Tex. 1989) (stating that requirement of timely objections is "designed to allow trial courts to correct any errors made during the course of the proceedings" and by failing to object at trial to testimony from undisclosed witness counsel "effectively den[ied] the] trial court the opportunity to review and correct [its] prior" ruling denying motion to exclude witness for lack of disclosure). In this case, the trial court sustained an objection to Deputy Jordan's written finding that Austin failed to yield the right-of-way even though he permitted testimony on that issue. Weems's counsel tried to convince the trial court that the opinion contained in Jordan's standard report should be permitted because the testimony was permitted, but the trial court refused. The rule requiring an objection both to the expert's testimony and to specific portions of documents containing the expert's opinion aids the trial court and

may result in a court excluding evidence contained in a document.

■ The rule requiring a party to identify the specific portions of documents that contain objectionable evidence is based on the practical reality that trial courts do not need to read the entirety of an offered exhibit. Testimony regarding law enforcement investigations is an example. If the trial court erroneously allows a police officer to testify regarding hearsay statements by an eyewitness that do not fall within a hearsay objection, the objection is waived if the same statement appears elsewhere in the record and no objection is made to the other evidence. *See Sosa v. Koshy*, 961 S.W.2d 420, 425–26 (Tex.App.-Houston [1st Dist.] 1997, writ denied) (holding that party waived error as to police officer's testimony regarding hearsay statements by third parties because jury heard testimony that included the statements before the party asked for a running objection).

## C. "No Objection" and Cumulative Evidence

■ Additionally, Mrs. Austin in effect withdrew her objections to those portions of the standard report that contained two statements by Deputy Jordan on the point of impact. An objecting party who preserves error by obtaining a ruling outside the presence of the jury waives any benefit to their objection by affirmatively stating "no objection" when the evidence is reoffered before the jury. *Gardner v. State*, 306 S.W.3d 274, 293 (Tex.Crim.App. 2009); *see Harrison v. State*, 333 S.W.3d 810, 812–13 (Tex.App.-Houston [1st Dist.] 2010, no pet. h.) (concluding that objection raised to length of pretrial voir dire was waived when counsel later replied that he had no objection to seating of jury). The standard report specifically states, "Victim either walked onto or was standing in the North bound lane. [Weems] struck pedes-

trian. POI APPROX. 2(ft) East of center line." Mrs. Austin objected that the report constituted hearsay and contained unspecified opinions without a proper predicate. The trial court asked to see the report, recessed the jury, and instructed her to "show me where the opinions are. Come up, counsel." Counsel identified the contributing factor portion of the accident report in which Deputy Jordan stated that Mr. Austin failed to yield the right-of-way. He then stated, "That's it." The trial court asked, "That's the only one you have?" to which counsel replied, "Yes, sir." The court ordered the report be redacted to remove the reference to the contributing factor listed, and stated that he would admit the standard report into evidence after the redaction. The redactions were completed as the witness testified, and Weems reoffered the standard report. Mrs. Austin's counsel renewed his objection to the contributing factor but agreed that the redaction had removed that opinion. The standard report was then admitted. In other words, the trial court sustained the only objection made by Mrs. Austin to the standard report. The portion that was not redacted stated that, "Victim either walked onto or was standing in the North bound lane. [Weems] struck pedestrian. POI APPROX. 2(ft) East of center line."

When Mrs. Austin affirmatively stated that she had no other objection to the report, she waived her objection to the point-of-impact opinion in the standard report. By doing so, she failed to preserve any error on the admission of Deputy Jordan's testimony because it then became cumulative of other evidence in the case. *See Marin*, 317 S.W.3d at 324 (holding that party fails to preserve error if it does not object to same or similar evidence that is offered by opposing party).

It is true that the trial court was aware of the nature of Mrs. Austin's objection and that Mrs. Austin believed all Deputy Jordan's opinions on the point of impact were inadmissible expert opinions. Tex. R.App. P. 33.1(a)(1)(A) (requiring an objection to be stated "with sufficient specificity to make the trial court aware of the complaint"). Even if the trial court had prolonged the recess to read the motion to exclude filed ten months earlier, the trial court did not know that Deputy Jordan's opinion was contained in three sentences in two exhibits because no objection was ever raised to those sentences. And, for one of the two exhibits, the standard report, the trial court believed that there were no remaining objections after the only objection that was made was sustained and the reports was redacted to remove the only specifically identified material. In conclusion, the objection was not specific enough to apprise the court that it was directed at the standard report, the identification of the point of impact in the diagram, or the second point of impact statements contained in the narrative report. In other words, the trial court was aware of the nature of the objection but not the specific source of the objectionable evidence (i.e. each of the five statements in the three reports). *See Volkswagen*, 159 S.W.3d at 907 (stating that running objection must clearly identify "the source and specific subject matter of the expected objectionable evidence.").

We do not have the authority to change the general rule that requires a party to object to same or similar evidence offered later during the trial or the specific rule that requires a specific objection to the portions of documents containing admissible and inadmissible statements. We do not believe expert evidence should be an exception to these general rules.[9]

We overruled Mrs. Austin's first issue.

### Factual Sufficiency

Mrs. Austin argues that the jury's finding that Mr. Austin was negligent, and not Weems, was against the great weight and preponderance of the evidence.

### I. Standard of Review

When a party challenges the factual sufficiency of a finding on an issue upon which that party had the burden of proof, that party must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001). We must consider and weigh all of the evidence and set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.* The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex.2003).

### II. Factually Sufficient Evidence

■ Mrs. Austin contends that all eyewitnesses to the accident testified that Weems hit Mr. Austin in the south-bound lane where Mr. Austin waited to cross the road. She asserts that only Weems and Deputy Jordan testified that the point of impact occurred in the north-bound lane. Summers and Marshall both testified at trial that they saw the point of impact in the south-bound lane and Henry testified that Weems passed so close to where she sat in Mr. Austin's truck in the south lane,

9. If Mrs. Austin had preserved error, we agree with the concurring opinion that any error would be harmless.

that the truck shook as he passed. Several witnesses also testified that Weems stated to the police that he had between one and three beers that night.

The jury, however, heard conflicting testimony about the location of Weems's car at the point of impact and the circumstances surrounding the accident. For example, Weems attacked the credibility of each of Mrs. Austin's eye-witnesses. Summers and Marshall's prior statements in their affidavits and depositions contradicted their trial testimony. Summers, who was 14 years old at the time of the accident, testified at trial that Weems made statements immediately after the accident that she had not mentioned at her deposition or other pretrial statements. She also testified at trial that she saw the impact, but at her deposition stated she first saw Mr. Austin in the air after he had been hit. At trial she also described what Mr. Austin wore the night of the accident, but at her deposition she did not remember his clothing. Marshall at trial testified that the area was well lit, but at his deposition he described the area as dark. Henry admitted that she never gave a statement to the police. Weems also impeached Smith who testified at trial that he never saw the accident and that Weems swerved into the south lane. In his deposition and his statement to police, he stated that he not only saw the impact, but the impact occurred in the north lane.

In support of the jury's verdict, Weems and Deputy Jordan testified that point of impact occurred in the north-bound lane and that he drove below the 55 mile per hour speed limit. The diagram, standard report, and the narrative all indicated that the impact occurred in the north-bound lane including a statement by a firefighter at the scene indicating that the location of the debris, "[M]ay be the point of impact." Weems stated that he did not see Mr.

Austin at the moment of impact, but several witnesses at the accident testified that the night was dark and that Mr. Austin wore dark clothing. Weems also denied that he consumed any alcohol that night and nothing in Deputy Jordan's report corroborates the testimony of Mrs. Austin's witnesses that Weems told the police that he had been drinking. In fact, the narrative states, "RO did not detect any odor of alcohol on the driver's breath or any indication by his actions that he may have been drinking. RO observed no evidence of alcohol inside his vehicle."

The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See id.* The jury here was free to disbelieve the trial testimony of the eye-witnesses, especially given the change in their testimony and the 13 years between the accident and trial. Further, the evidence of the darkness, speed limit, Mr. Austin's dark clothing, and the testimony of witnesses placing the point of impact in Weems's lane of traffic all support the jury's finding. We do not find that the testimony in support of the jury's finding to be so weak as to make the verdict clearly wrong or manifestly unjust. *See Dow Chem.,* 46 S.W.3d at 242.

We overrule Mrs. Austin's second issue.

### Jury Argument

■ Mrs. Austin argues Weems's counsel made an incurable jury argument by implying, through words and a hand gesture, that one of the fact witnesses, Smith, had been bribed to change his testimony. Weems's counsel made the following statements in his closing argument:

> Now, how do you go from being an eyewitness to the accident, telling the deputy what you saw, then giving a deposition two years later and telling lawyers what you saw, to suddenly realizing, the week before trial that you really

didn't see the accident? How does that happen? Does it make any sense to you? Does your common sense give you a clue as to how that happened? You know good and well how that happens. You know good and well how something like that comes about ... So, how do you go from that, seeing all of that, hearing all of that? How does that happen; and then on the eve of trial, suddenly you realize I didn't see the accident? I didn't see the accident. You know how that happens. You know why that happens.

Mrs. Austin asserted for the first time in her second amended motion for new trial that Weems's counsel also made a hand gesture rubbing his thumb against his fingers indicating money when he said, "You know good and well how that happens. You know good and well how something like that comes about." She attached her counsel's affidavit to support her allegation. Weems responded to the motion for new trial asserting that his counsel did not remember making the gesture, and even if he had, the implication would have been that the witness sought monetary compensation for Mr. Austin's family out of sympathy. Weems did not, however, attach an affidavit or other sworn statement as evidence.

## I. Incurable Argument

▆▆▆▆ Mrs. Austin failed to object at trial to the statements or gestures and therefore waived her complaint unless she can show the harm to be incurable. *See Living Ctrs. of Tex., Inc. v. Penalver*, 256 S.W.3d 678, 680 (Tex.2008). Incurable jury argument is rare because, in most cases, retraction of the argument or instruction from the court can cure any probable harm. *Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex.2009). In those rare cases, a complaint as to an incurable argument may be made even without a timely

objection. *See* TEX.R. CIV. P. 324(b)(5); *Living Ctrs. of Tex.*, 256 S.W.3d at 680. "The party claiming incurable harm must persuade the court that, based on the record as a whole, the offensive argument was so extreme that a 'juror of ordinary intelligence could have been persuaded by that argument to agree to a verdict contrary to that to which he would have agreed but for such argument.'" *Phillips*, 288 S.W.3d at 883 (quoting *Goforth v. Alvey*, 153 Tex. 449, 271 S.W.2d 404, 404 (1954)). Incurable argument must strike at the very core of the judicial process. *Phillips*, 288 S.W.3d at 883. Appeals to racial prejudice and unsupported, extreme, and personal attacks on opposing parties, counsel, and witnesses can compromise the basic premise that a trial provides impartial, equal justice. *Living Ctrs. of Tex.*, 256 S.W.3d at 681.

Nothing in the record corroborates Mrs. Austin's claim that counsel made a hand gesture beyond her attorney's affidavit— an affidavit attached for the first time to the third iteration of Mrs. Austin's motion for new trial. The trial judge did not make any statement on the record indicating that he saw the gesture. The failure to object to any hand gesture at the time of the argument, or at least immediately after the argument while the jury deliberated, created a problem with the lack of a record of the gesture. If counsel had objected at that time the court could have made a fact finding regarding whether the alleged gesture was made, a ruling much easier at the time than three months later with the second amended motion for new trial. The lack of an objection obviated the court's ability to make such a fact finding. The court's failure to grant a new trial suggest that it either believed the gesture was not made or that it could have been cured.

The statements themselves are not so extreme that a "juror of ordinary intelligence could have been persuaded by that argument to agree to a verdict contrary to that to which he would have agreed but for such argument." *See Phillips*, 288 S.W.3d at 883. Smith's credibility had been vigorously attacked during cross-examination. That attack included questions pointing out that Smith's testimony remained the same for 13 years until he met with Mrs. Austin's counsel immediately before trial. The argument also did not directly accuse the witness of accepting a bribe.

It is the lack of direct attack that makes Mrs. Austin's reliance on *Howsley & Jacobs v. Kendall*, 376 S.W.2d 562, 565–66 (Tex.1964), in which counsel stated that "[s]omebody was testifying through the lips of [the witness]," misplaced. The implication from the argument here, assuming the gesture was made, was not nearly so direct an attack. The indication that money was a motive for Smith's testimony could have been interpreted as indicating that someone had bribed the witness but could also possibly indicate that the witness was attempting to help the Austin family financially.

██ Improper attacks on the credibility of a witness or a party may be cured by instruction or withdrawal. *See Dunn v. Bank-Tec S.*, 134 S.W.3d 315, 323–24 (Tex.App.-Amarillo 2003, no pet.). Smith admitted that his testimony had changed and counsel was entitled to bring that fact to the jury's attention during argument. Smith also provided an explanation for his shift by saying he was confused in his statement to police and his deposition as to the north-south direction of the road. Even without counsel's argument the jury did not have to accept Smith's explanation of the differences in his testimony. The jury could have simply believed his statement made to Deputy Jordan within min-

utes of the accident and his deposition given within five years of the accident were more credible than his trial testimony 13 years later. *See Jones v. Republic Waste Servs. of Tex., Ltd.*, 236 S.W.3d 390, 403 (Tex.App.-Houston [1st Dist] 2007, pet. denied) (stating witness presented arguably legitimate explanation for change in testimony, "Thus, the jury could have, with the proper instruction, found [counsel's] arguments to be deliberately false and in bad faith.").

The trial court could have instructed the jury that there was no evidence of bribery, forced counsel to clarify that he meant that the witness was attempting to help the family financially, or simply reminded the jury that attorney argument is not evidence and that the jury should decide the case based on the evidence. All of these instructions, and perhaps others, were available at the time, and would have cured any error. *See Zurita v. Lombana*, 322 S.W.3d 463, 482–83 (Tex.App.-Houston [14th Dist.] 2010, no pet. h.) (holding counsel's argument not incurable because parties are entitled to argue facts to jury and counsel did not use inflammatory epithets such as "liar," "fraud," "faker," "cheat," or "imposter."). Assuming the gesture was made, the argument was improper, but it was not incurably so under these circumstances. Mrs. Austin, therefore, must have objected in order to preserve her complaint for appeal.

We overrule Mrs. Austin's third issue.

## Conclusion

We hold the evidence was factually sufficient to support the jury's verdict. Mrs. Austin failed to preserve error as to the admission Deputy Jordan's testimony and any improper jury argument by Weems's

counsel. We affirm the judgment of the trial court.

Justice JENNINGS, concurring.

TERRY JENNINGS, Justice, concurring.

I join the majority opinion except in its discussion of the first issue of appellant, Charlotte Austin. I would hold that Austin has preserved for our review this issue, in which she contends that "the trial court erred when it allowed Deputy Jordan to give his opinion about the location of the point of impact where the accident occurred."

In order to preserve a complaint for appellate review, a party must, by a timely request, objection, or motion, make her complaint, stating the grounds for the ruling sought, to the trial court with "sufficient specificity to make the trial court aware of the complaint." TEX.R.APP. P. 33.1(a)(1)(A). However, it is not necessary to make such an exacting statement of the grounds for the ruling sought if "the specific grounds were apparent from the context." *Id.*

It is true, as emphasized by the majority, that Austin, in her "Motion to Exclude Expert Testimony From Deputy Henry K. Jordan," did not specifically ask the trial court to exclude any statements made by Jordan other than his "testimony." However, in her motion, Austin argued that Jordan "is not qualified to render an expert opinion regarding an accident" and his "opinions are not reliable." Moreover, at the hearing on her motion, Austin's counsel made it clear to the trial court that she was seeking to exclude any "opinion" of Jordan on the issue of "point of impact." As noted by her counsel at the hearing, "[W]e challenge ... that this witness is not competent to form an opinion, and particularly the only opinion that we're talking about is point of impact."

I agree with the majority that to preserve error regarding the erroneous admission into evidence of an expert's opinions, a party must make it clear to the trial court that she is objecting to all *evidence* of the expert's opinions. Here, however, it appears that Austin merely conflated the word "testimony" with the word "evidence," which is not uncommon. Given the gist of Austin's arguments, made in her motion and at the hearing, the trial court was in a position to be well aware that she was requesting the exclusion of any *evidence* of Jordan's point-of-impact opinion, not just his opinion "testimony," and to make an informed ruling on her request. Given the context, I would hold that Austin has preserved her first issue for our review.

Nevertheless, even assuming that the trial court erred in admitting into evidence Deputy Jordan's opinion on the issue of "point of impact," Austin has not established that Jordan's opinion evidence probably caused the rendition of an improper judgment. *See* Tex.R.App. P. 44.1(a)(1). A review of the entire record reveals that other witnesses testified about the point of impact in accord with Jordan and, importantly, counsel for Weems did not emphasize Jordan's opinion to the jury. *See Nissan Motor Co. Ltd. v. Armstrong,* 145 S.W.3d 131, 144 (Tex.2004). Accordingly, I concur in the judgment of this Court.