**Opinion issued December 20, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-11-00611-CV

_____

**STACY J. WILLIAMS, Appellant**

**V.**

**T. NICHOLE MAI, Appellee**

___

**On Appeal from the 506th District Court**
**Waller County, Texas**
**Trial Court Case No. 08-05-19379**

___

## MEMORANDUM OPINION

Stacy J. Williams appeals from the trial court's rendition of judgment in a suit brought by T. Nichole Mai for partition of 54 acres of real property. Mai also claimed damages from being ousted from the property. Williams counterclaimed

for damages for Mai's failure to contribute towards the necessary expenditures to preserve the property after Mai left the property in 2006. After a bench trial, the trial court partitioned the property and determined that Mai's claim for damages due to her ouster from the property completely offset Williams's claim for contribution for expenditures made towards the property after Mai's ouster. It awarded 72 percent of the tract, including all improvements, to Williams, and the remaining 28 percent to Mai. On appeal, Williams contends that (1) the trial court erred by admitting irrelevant evidence, (2) insufficient evidence supports the trial court's determination that the claims for ouster and contribution offset one another, and (3) insufficient evidence supports the 72%-to-28% partition of the property. We affirm.

## Background

Williams and Mai had a relationship from February 1995 through January 2006. In June 1999, they purchased a 54.635 acre tract of land in Waller County, near Hempstead. Williams signed the loan and closing documents both for herself and for Mai, pursuant to a power of attorney executed by Mai. Williams paid for a residence to be built on the property, and Williams and Mai began living there in early 2000. In January 2006, Mai moved off the property. In 2008, Mai sued Williams for partition. The case eventually involved additional claims: Mai sought damages for Williams's alleged ouster of Mai from the property and Williams

2

sought reimbursement for Mai's unpaid share of the mortgage, taxes, and insurance on the property following the ouster. Mai also made a claim in quantum meruit to recover the value of services she claimed to have performed for Williams's horse business, but the trial court granted a take-nothing summary judgment for Williams on that claim before trial.

The evidence at trial was conflicting in many respects. Williams testified that she made all mortgage, tax, and insurance payments and paid for all improvements to the property. She maintained that the intent was always that she was to be the sole owner of the property. In addition to using the property as a residence, Williams wanted to use the property for an expansion of her horse-breeding business. According to Williams, Mai was a co-signer on the note only because Williams did not have sufficient income history to qualify for a loan at the time she bought the property. Williams further testified that once she was able to qualify for a refinancing loan, the plan was for her to refinance and transfer the property and note to her name only.

Mai testified that, from the outset, the intent was always that she and Williams would be co-owners. Contrary to Williams's claims, Mai testified that she did contribute towards the mortgage and other expenditures related to the property, especially early on, but that, at some point, she and Williams agreed that Williams alone would make payments on the property and Mai would pay for

household expenses as her contribution towards the property. Additionally, Mai testified she and Williams agreed that the value of Mai's work in caring for Williams's horses would also count towards Mai's contribution towards her ownership interest in the property. Williams flatly denied that either of these agreements existed and also testified that Mai provided no significant labor or services caring for the horses.

One undisputed fact is that Mai moved off the property in January 2006. She testified that, very shortly after she moved, Williams changed the locks to the residence and out-buildings and changed the gate code, denying Mai access to the property. Williams denied that she ever excluded Mai from the property, claiming she allowed Mai to come to the property whenever she needed. After Mai left, Brandolyn Dreith lived in the residence for nearly three years. Williams and Dreith testified that Williams allowed Dreith to stay as a favor while Dreith was experiencing financial hardships, and they both denied that there was any rental arrangement. The evidence did show, however, that Dreith helped care for the horses and maintain the property, and, at one time, did so for a five-month period during which Williams was working out of state.

Williams presented evidence that her expenditures for the property totaled over $600,000. This included the mortgage, taxes, and insurance, as well as the improvements, equipment to care for the horses and property, repairs, and

4

maintenance. Williams acknowledged that if the trial court awarded her the improvements in a partition, she would not seek contribution from Mai for the improvements. Williams's evidence showed that she paid over $87,000 on taxes, mortgage, and insurance from the time Mai moved off the property until trial.

Mai presented evidence that she had made some payments towards the mortgage of approximately $16,000. She also presented evidence that her total expenditures towards the property, improvements, and the parties' household expenses were at least $134,000. Mai also created a log estimating the amount of work she performed caring for Williams's horses. She presented an equine services expert, who testified that using Mai's estimates a "low to medium" figure for the value of the services Mai provided from June 1999 to January 2006 was $260,000. Finally, to support her claim for ouster damages, Mai presented testimony from a realtor that the rental value of the property was $3500 monthly if all the property were rented for a horse business and $750 monthly if just the residence were rented.

The trial court's judgment ordered that commissioners be appointed to partition the property. The trial court specified that Williams receive 72 percent of the property, including the residence and all improvements. Mai was to receive unimproved land equal to 28 percent of the property. The trial court's findings of fact and conclusions of law state that Williams committed an ouster after Mai

5

moved off the property, but that Mai ceased making financial or "in kind" contributions to the property after she moved. The trial court found that the ouster damages and contribution damages each completely offset the other.

**Evidence of Mai's Services Performed in Caring for Williams's Horses**

In her third issue, Williams contends the trial court erred by admitting evidence of the services Mai claimed to have provided in caring for Williams's horses. Williams argues the evidence was not relevant because Mai's quantum meruit claim had been disposed of in a prior summary judgment, and pertinent case law establishes that personal services are not considered in adjusting the equities in a partition suit.

A timely and specific objection to evidence is required to preserve error for appellate review. TEX. R. APP. P. 33.1(a); *see also* TEX. R. EVID. 103(a)(1). And the general rule is error in the admission of testimony is not preserved "if the objecting party subsequently permits the same or similar evidence to be introduced without objection." *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004). When a party objects to testimony but allows an exhibit containing the same or similar evidence to be admitted, error is not preserved. *Austin v. Weems*, 337 S.W.3d 415, 424 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *see also Marin v. IESI TX Corp.*, 317 S.W.3d 314, 324 (Tex. App.—Houston [1st

Dist.] 2010, pet. denied) (holding error in admitting exhibit not preserved when witness testified to contents of exhibit without objection).

Mai testified orally about her work caring for Williams's horses and the value of that work. She also introduced Plaintiff's Exhibit 27, a log summarizing the work she claimed to have performed in caring for the horses. And Mai's equine services expert testified about the value of Mai's work. Williams objected to the relevance of a portion of Mai's oral testimony because it concerned work done before the parties or the horses had moved onto the Hempstead property. The objection concerned only the services Mai performed during this time period, and, after the objection was overruled, Mai testified about the rest of her services without objection. And Plaintiff's Exhibit 27 had already been admitted when Mai testified. Finally, Williams did not object to Mai's expert's testimony. The same or similar evidence that Williams complains of on appeal was admitted elsewhere in the trial without a relevance objection. Accordingly, we hold that Williams's complaint of the relevancy of the evidence is not preserved for review. *See Austin*, 337 S.W.3d at 424; *Marin*, 317 S.W.3de at 324.

We overrule Williams's third issue.

### Ouster, Contribution, and Partition

In her first issue, Williams contends that the evidence is legally insufficient to support the trial court's findings and conclusions concerning the partition of the

7

property in the ratio of 72% to Williams and 28% to Mai. In her second issue, Williams contends that insufficient evidence supports the trial court's findings of fact and conclusions of law that Mai's ouster damages completely offset Williams's contribution claim.

## A. The Trial Court did not Abuse its Discretion in Partitioning Property

### 1. Law Pertaining to Partition and Standard of Review

"A joint owner or claimant of real property or an interest in real property . . . may compel a partition of the interest or the property among the joint owners or claimants . . . ." TEX. PROP. CODE. ANN. § 23.001 (West 2000). When a party seeks partition, the trial court "shall determine the share or interest of each of the joint owners or claimants in the real estate sought to be divided, and all questions of law or equity affecting the title to such land which may arise." TEX. R. CIV. P. 760. The trial court shall order partition if it "determines that the whole, or any part of such property is susceptible of partition." TEX. R. CIV. P. 761. "Should the court be of the opinion that a fair and equitable division of the real estate, or any part thereof, cannot be made, it shall order a sale of so much as is incapable of partition." TEX. R. CIV. P. 770. Williams does not contend that the real property was not subject to partition. Rather, she argues that the trial court erred in determining her and Mai's respective shares of ownership.

8

The rules of equity govern the trial court's partition of property. *McGehee v. Campbell*, No. 01-08-1023-CV, 2010 WL 1241300, at \*3 (Tex. App.—Houston [1st Dist.] Mar. 25, 2010, no pet.) (citing *Thomas v. Sw. Settlement & Dev. Co.*, 123 S.W.2d 290, 296 (Tex. 1939); *Yturria v. Kimbro*, 921 S.W.2d 338, 342 (Tex. App.—Corpus Christi 1996, no writ)). "In matters of equity, we review the court's decision for an abuse of discretion." *Wagner & Brown., Ltd. v. Sheppard*, 282 S.W.3d 419, 428–29 (Tex. 2008). Generally, a trial court abuses its discretion if it acts arbitrarily, unreasonably, or without regard to guiding legal principles. *Id.* In matters involving factual disputes, however, a trial court does not abuse its discretion "if it bases its decision on conflicting evidence and some evidence supports its decision." *See Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009) (citing *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998)). If the trial court's decision "is contrary to the only permissible view of probative, properly-admitted evidence," then it amounts to an abuse of discretion. *Id.*

### 2. Trial Court's Findings of Fact and Conclusions of Law

The trial court's findings and conclusions concerning the partition state:

[Finding of Fact number 5:] From the date of purchase until January, 2006, Mai provided both financial and in-kind contributions to the mortgage payments, property taxes, insurance on the property, upkeep and maintenance on the Subject Property, and otherwise provided value to Williams for the preservation of the Subject Property.

. . . .

9

[Conclusion of Law number 8:] After considering the equities and offsets due to each party, the financial contributions of the parties, the actual payments made by each co-tenant, and the providing of value by Mai to Williams for the preservation of the Subject Property, the parties are each entitled to a portion of the Subject Property as follows:

a.     Williams shall be entitled to seventy-two percent (72%) of the total acreage of the Subject Property, with such percentage to include all of the residential structure, the barn, the equipment shed, the loafing shed, the paddocks and the appurtenances associated with all said property. In addition, as part of the equitable offset, Williams shall be obligated to assume and pay the remaining indebtedness on the Subject Property.

b.     Mai shall be entitled to twenty-eight percent (28%) of the total acreage of the Subject Property, with such percentage to include the Entrance #2 as described in Plaintiff's Exhibit 30.

## 3. Analysis

As discussed above, the parties presented conflicting evidence concerning their respective contributions to the property. They disputed whether Mai and Williams agreed that Mai would contribute to the property "in kind"—by paying for household expenses and caring for Williams's horses. And they disputed the value of Mai's contributions. Mai testified that she contributed $16,000 towards the property and that, if her contributions towards groceries and other household expenses were counted, she contributed approximately $134,000. Additionally, Mai, through her own estimates of amount of time worked caring for Williams's horses and her expert's valuation testimony, presented evidence that she contributed approximately $260,000 through her services.

10

But Williams claimed Mai made no financial or in-kind contributions towards the property. Williams also testified that Mai did not contribute any significant amount of labor towards caring for the horses and that part of the labor Mai included in her estimates was for the period of time before the horses were located on the Hempstead property and before the parties resided on the property. With respect to her own contributions, Williams's evidence showed that she spent over $600,000 on the property for mortgage payments, insurance, taxes, improvements, equipment, repairs, and maintenance. She acknowledged, however, that if the trial court were to award her the improvements, she would not seek contribution for those from Mai.

In short, the trial court was presented with a wide range of conflicting testimony concerning each party's contribution to the property. A trial court does not abuse its discretion when its decision is based on conflicting evidence. *See Unifund CCR Partners*, 299 S.W.3d at 97. Accordingly, we conclude that the trial court did not abuse its discretion when it ordered an equitable partition of the property of 72% (including all improvements) for Williams and 28% (consisting of unimproved land) for Mai. *See id.*; *see also Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996) (holding trial court did not abuse discretion in awarding disproportionate amount of community estate to wife when record contained some evidence supporting unequal division).

11

We overrule Williams's first issue.

## B.    Sufficient Evidence Supports the Offset

### 1.    Standard of Review

Although Williams states she is challenging the legal sufficiency of the evidence, she limits the relief requested in this appeal to a remand for a new trial. Generally, we render judgment if legally insufficient evidence supports the trial court's judgment after a trial on the merits. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 929 (Tex. 2009); *Guevara v. Ferrer*, 247 S.W.3d 662, 670 (Tex. 2007). We remand when the evidence is legally sufficient but factually insufficient. *See Wright Way Spraying Serv. v. Butler*, 690 S.W.2d 897, 898 (Tex. 1985). Because Williams expressly asks for a remand and does not present any argument or analysis for rendering a judgment in her favor, or state what the judgment should be, we will address the factual sufficiency of the evidence.

In an appeal of a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and we review the factual sufficiency of the evidence used to support them just as we would review a jury's findings. *See MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009). When a party challenges the factual sufficiency of a finding on an issue on which the party did not have the burden of proof, we consider and weigh all of the evidence and set aside the verdict only if the evidence

12

that supports the finding is so weak as to make the finding clearly wrong and manifestly unjust. *Pitts & Collard, L.L.P. v. Schechter*, 369 S.W.3d 301, 312 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). The trial court, as finder of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Salomon v. Lesay*, 369 S.W.3d 540, 549 (Tex. App.—Houston [1st Dist.] 2012, no pet.). The fact finder may believe or disbelieve the testimony of a witness, in whole or in part, and it may resolve any inconsistencies in a witness's testimony. *Id.*

We review a trial court's conclusions of law de novo, and we will uphold the conclusions if the judgment can be sustained on any legal theory supported by the evidence. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Although a trial court's conclusions of law may not be challenged for factual sufficiency, we may review the legal conclusions drawn from the facts to determine whether the conclusions are correct. *Id.* If we determine that a conclusion of law is erroneous, but that the trial court nevertheless rendered the proper judgment, the error does not require reversal. *Id.*

### 2. Law Pertaining to Partition and Claims between Cotenants

"On partition, a cotenant who expends funds necessary to protect or preserve the common property is entitled to have those expenditures charged to the tenants in common according to their pro rata ownership." *McGehee*, 2010 WL 1241300,

13

at *3 (citing *Gonzalez v. Gonzalez*, 552 S.W.2d 175, 181 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.); *Wooley v. West*, 391 S.W.2d 157, 160 (Tex. Civ. App.—Tyler 1965, writ ref'd n.r.e.)). "Expenditures necessary to preserve the common property include those for taxes, insurance, and repairs." *Id.* (citing *Duke v. Squibb*, 392 S.W.2d 885, 888 (Tex. Civ. App.—Texarkana 1965, no writ)). However, a co-tenant must also share any income or rents from the use of the property. *I-10 Colony, Inc. v. Chao Kuan Lee*, No. 14-10-01051-CV, 2012 WL 4355534, at *7 (Tex. App.—Houston [14th Dist.] Sept. 25, 2012, no. pet. h.) (citing *McGehee*, 2010 WL 1241300, at *5). Claims for incomes or rents and claims for expenditures may offset one another. *Id.*

Any co-tenant who owns an interest in property has the right to possession of the property. *Wright v. Jammer*, No. 01-88-00526-CV, 1989 WL 32008, at *3 (Tex. App.—Houston [1st Dist.] Apr. 6, 1989, no writ) (not designated for publication) (citing *Todd v. Bruner*, 365 S.W.2d 155, 160 (Tex. 1963)). "A co-tenant who occupies joint property is not required to account for the value of its use unless there is an ouster or denial of use to other co-tenants." *Id.* (citing *Potka v. Potka*, 205 S.W.2d 51, 55 (Tex. Civ. App.—Waco 1947, writ ref'd n.r.e.)); *see also McGehee*, 2010 WL 1241300, at *4 (citing *Burns v. Wood*, 427 S.W.2d 353 (Tex. Civ. App.—Tyler 1968, writ ref'd n.r.e.)) ("A cotenant in possession who excludes another cotenant is liable to the excluded cotenant for the rental value of

14

his or her possession."); *Trevino v. Trevino*, 64 S.W.3d 166, 174 (Tex. App.—San Antonio 2001, no pet.) (holding that cotenants are required to share income generated from property held in common).

### 3. Trial Court's Findings of Fact and Conclusions of Law

The trial court found Mai's claim for ouster damages was offset by Williams's claim for contribution. The relevant findings of fact and conclusions of law provide:

> [Finding of fact number 8:] After Mai's ouster, Williams retained all benefits and consideration received from the Subject Property, including using it as a place for her horse business, retaining or accepting hay produced on the property, exercising income tax deductions pertaining to the property, living on the property and enjoying all other uses and benefits pertaining to the property.
>
> [Finding of fact number 9:] After Mai's ouster, Mai did not pay any amount of money nor did she provide any in-kind contribution to the mortgage payments, property taxes, insurance on the property, upkeep and maintenance on the Subject Property, and did not otherwise provide anything of value to Williams for the preservation of the Subject Property.
>
> . . . .
>
> [Conclusion of Law number 4:] Williams was damaged by Mai's failure to contribute to the payment for the property, including the mortgage payments, property taxes, insurance, upkeep and maintenance of the Subject Property after Mai's ouster from the Subject Property.
>
> [Conclusion of Law number 4:] The damages incurred by Mai as a result of the ouster by Williams are offset by Mai's failure to pay any amount or provide any in-kind contributions to the mortgage payments, property taxes, insurance on the Subject Property, upkeep

15

and maintenance on the property after Mai's ouster from the Subject Property.

[Conclusion of Law number 6:] The damages incurred by Williams as a result of Mai's failure to pay any amount or provide in-kind contributions to the mortgage payments, property taxes, insurance on the property, upkeep and maintenance on the property after Mai's ouster, is offset by the benefits received by Williams in exercising exclusive dominion and control over the Subject Property and obtaining the tax and business benefits associated therewith.

**4.      Analysis**

The trial court found that Williams ousted Mai from the property after Mai voluntarily left in January 2006, and Williams does not challenge this finding on appeal. Because the trial court found an ouster, Williams could be required to account for the value of the use of the property after Mai was excluded. *See McGehee*, 2010 WL 1241300, at *4; *Wright*, 1989 WL 32008, at *3. Mai presented testimony from a realtor that the rental value of all the property, including the facilities for horses, was $3,500 monthly. The realtor also testified that the rental value for the residence only was $750 monthly. Applying these amounts to the sixty-month period from the ouster until trial (January 2006 to February 2011) yields a rental value between $45,000 and $210,000. Mai's interest in the rental value during that period, assuming a 50/50 co-tenancy, which the trial court also found, is half that amount.

The undisputed evidence shows that Williams paid the mortgage, insurance, and taxes from February 2006 until the January 2011 trial. These are expenditures

16

for which a claim for contribution may be made. *McGehee*, 2010 WL 1241300, at *3. The mortgage payments for those sixty months were $1,167.24 monthly, or $70,034.40 total. Additionally, during that same period, Williams spent $12,922.53 on taxes and $4,751.24 on insurance. Williams's total expenditures for those sixty months were $87,708.17. Mai's contribution as fifty percent owner was half that, or $43,854.085.

We conclude that the evidence is factually sufficient to support the trial court's determination that Williams's and Mai's damages completely offset each other. The trial court, as the fact finder, may award damages within the range of evidence presented at trial, if there is a rational basis for that award. *Hertz Equip. Rental Corp. v. Barousse*, 365 S.W.3d 46, 57 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *see also Moore v. Moore*, No. 05-10-00498-CV, 2012 WL 2553565, at *8 (Tex. App.—Dallas July 3, 2012, no pet.) (stating that trial court may assign value to property that is within range of evidence presented at trial when determining the just and right division of community property). Here, the trial court was presented with evidence establishing a range of values for the rental value of the property during the time period between ouster and trial. The value of Williams's contribution was within that range. The trial court, as the fact finder, could rationally have determined that Mai's damages from being ousted from the property were offset completely by Williams's damages from Mai's failure to

17

contribute after leaving the property. *See Hertz Equip. Rental Corp.*, 365 S.W.3d at 57.

We overrule Williams's second issue.

## Conclusion

We affirm the trial court's judgment.


Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.