

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-13-00057-CV

LAKOTA ENERGY LIMITED
PARTNERSHIP

APPELLANT AND APPELLEE

V.

MERIT MANAGEMENT PARTNERS I,
L.P.; MERIT ENERGY PARTNERS III,
L.P.; AND MERIT ENERGY
COMPANY, LLC

APPELLEES AND APPELLANTS

----------

FROM THE 271ST DISTRICT COURT OF WISE COUNTY
TRIAL COURT NO. CV11-04-320

----------

## MEMORANDUM OPINION[1]

----------

---

[1]*See* Tex. R. App. P. 47.4. This case was originally submitted with oral argument on June 17, 2014, before a panel consisting of Justice Dauphinot, Justice Gardner, and Justice Meier. On October 12, 2016, the court sua sponte ordered this case reset for submission on November 2, 2016, without further oral argument; assigned this case to a new panel, consisting of Justice Dauphinot, Justice Meier, and Justice Gabriel; and assigned the undersigned to author the opinion. *See* Tex. R. App. P. 39.8, 41.1(a)–(b).

In this appeal, Lakota Energy Limited Partnership asks this court to reverse a jury verdict that interpreted granting clauses in conveyances of several mineral interests sold to Lakota. Because Lakota has waived the crux of its arguments asserted on appeal to undermine the jury's verdict and because the remaining issues reveal no reversible error, we affirm the trial court's judgment.

## I. BACKGROUND

In 1998, Merit Management Partners I, L.P.; Merit Energy Partners III, L.P.; and Merit Energy Company, LLC (collectively, Merit)[2] bought several oil and gas interests on properties located in Jack, Parker, and Wise Counties. These interests were working and nonworking interests. Operating working interests bear the cost of production, while nonworking interests, such as royalty interests, take only a portion of the net production. *See Paradigm Oil, Inc. v. Retamco Operating*, 372 S.W.3d 177, 180 nn. 1 & 2 (Tex. 2012).

---

[2]These companies are related business entities engaged in acquiring, developing, and operating oil and gas wells on leased estates. Merit Energy Company is the managing partner for the other two entities, which do not have employees. Throughout the appellate briefing, no party consistently attempts to parse which specific entity engaged in each identified action that was the subject of the parties' underlying dispute. Indeed, such a detailed identification seems unnecessary to the resolution of this appeal. Thus, we will follow the parties' lead and simply refer to "Merit" as the appropriate party to this appeal, except when necessary to differentiate between the Merit entities. In that event, we will refer to the individual entity as "Merit Partners I," "Merit Partners III," or "Merit Energy."

2

## A. THE AUCTION AND THE CONVEYANCES

Two years later, Merit decided to sell several of its nonoperating interests by auction and hired Oil and Gas Asset Clearinghouse to do so. Clearinghouse issued a catalog that listed for sale Merit's specified interests in eighty-five wells located in the three counties, which were grouped together into Lot 85.[3] In the catalog, two of the eighty-five interests listed in Lot 85 were "non-operated working interests" and the remainder were overriding royalty interests— nonworking interests. None were listed as including operating interests. The catalog stated that the provided information was "a convenience" and "should be independently verified by the Bidder prior to bidding" because the information was "without warranty, express or implied, as to accuracy, completeness or correctness."

In anticipation of the auction, Merit's general counsel, Fred Diem, signed a "CONVEYANCE, ASSIGNMENT AND BILL OF SALE" for Jack, Parker, and Wise Counties to convey the Lot 85 interests located in those counties. Each conveyance noted that it related to "(Lot # <u>85         </u>)" at the bottom of the first page. Each conveyance included a granting clause that described the interest conveyed by Merit:

---

[3]Merit sold other interests the same day, which were grouped into Lots 87 and 88, but the only lot at issue in this appeal is Lot 85. Chad Brister, a Merit vice president, stated that Lot 85 was "essentially" comprised of overriding royalty interests on wells in the three counties.

3

> [Merit] has transferred, bargained, conveyed, and assigned, and does hereby transfer, bargain, convey and assign to [Buyer] . . . subject to the reservation of rights set forth in (a) below, all of the right, title and interest of [Merit] in and to the following properties and assets . . . :
>
>     (a)  The oil, gas and mineral leasehold estates and other real property and mineral interests described in <u>Exhibit A</u>, including, without limitation, any royalty, overriding royalty, net profits interests or similar interests owned by [Merit] and burdening the leasehold estates or lands described in <u>Exhibit A</u>, together with all of [Merit's] rights in respect of any pooled, communitized or unitized acreage of which any such interest is a part, **INSOFAR AND ONLY INSOFAR,** as such leasehold estates or mineral interests cover lands lying within a pooled unit or if such leasehold is not within a pooled unit the lands lying within the proration or spacing units, as established by and as set forth on the applicable form P-15 filed with the Railroad Commission of Texas, for the wells described on <u>Exhibit B</u> . . . .

Exhibit A to the Jack County conveyance listed two leases, Exhibit A to the Parker County conveyance listed five leases, and Exhibit A to the Wise County conveyance listed sixty-six leases (collectively, the Exhibit A leases).  Exhibits B identified 100 specific wells located on the Exhibit A leases by well name, the operator of each well, the working interest for each well, and the net revenue interest expressed as a percentage.  With two exceptions,[4] the working interest for each of the remaining ninety-eight wells in Exhibits B was listed as "0.00." The bottom of each page of Exhibits A and Exhibits B included the notation "LOT 85."

---

[4]The Cocanougher G H C3 well and the Earl Mooney #3 well were listed as 25% working interests with an additional overriding royalty interest.

4

Merit determined that the minimum acceptable bid for Lot 85 would be $470,000. Lakota, a self-described "small, family business" that drills and operates oil and gas wells, bid $400,000 for Lot 85, which was the highest bid at the May 17, 2000 auction. Before bidding on Lot 85, Lakota had reviewed the catalog and the conveyances to determine "what income is coming in at that particular time" and to "find out exactly the terms of the transaction; . . . if there were any limitations." Because Lakota's bid was below the minimum bid established by Merit, Merit and Lakota negotiated a purchase price of $450,000 for Lot 85. Karl Black, the owner of Lakota, then signed the conveyances as the assignee.

Lakota conducted a sixty-day, post-bid due diligence, but focused on the wells in Exhibits B and did not verify title to the Exhibit A leases. Lakota's due diligence revealed thirteen operating wells located on Exhibit A leases that were not listed in Exhibits B. Merit added these wells to Exhibits B at no additional cost to Lakota even though the wells had not been listed in the auction catalog. The added wells were similar to most in the original Exhibits B in that they represented overriding royalty interests.

## B. POST-CONVEYANCE CONDUCT

After Lakota bought Lot 85 at the 2000 auction, Lakota received royalty payments, and approximately thirty new wells were drilled on the Exhibit A leases. Merit continued to conduct operations on the Exhibit A leases and paid all ad valorum, separation, and property taxes due on the leaseholds. Merit also

5

paid all lease-operating expenses for the Exhibit A leases after the date of the conveyances.

On May 24, 2010, ten years after the auction, Devon Energy Production Company, L.P. contacted Lakota and offered to "acquire by Assignment from Lakota . . . a one-hundred percent (100%) working interest in and to the oil and gas leases" described in an attachment to Devon's letter. Devon's attachment listed four leases located in Wise County, which were included as part of Exhibit A to the Wise County conveyance. Devon had not verified title to any of the leaseholds, performing only a "cursory check" before sending the letter to Lakota, but the letter provided that Devon would verify title during the due-diligence period if Lakota accepted Devon's offer.

After Lakota did not respond to Devon's letter by the June 11, 2010 deadline, Devon's landman, Hunter Vest, contacted Black about the offer. Black expressed surprise and told Vest that he "didn't even know that [Lakota] owned this." In September 2010, Black sent Merit a letter, directed to its "Royalty Relations Department," asking about the interests conveyed in 2000:

> It was brought to my attention that we bought interest in leases that we did not know until it was brought to my attention. We bought these properties and I never read the "Conveyance, Assignment and Bill of Sale[."]
>
> The deeded leases in question, that we have identified thus far are the (1) Foxall B-4, (2) Shields A-4, (3) McDermott, and (4) Cocanougher C-3.
>
> We would like clarification of this issue.

6

On October 4, 2010, after Lakota had not received a response from Merit, Black sent a second letter to Merit again asking for clarification on the interests conveyed in the Wise County conveyance to the four specified leases and stating that his attorney had advised that the Wise County conveyance "was definitely a deed" to the four leases.

## C. DISPUTE LEADING TO CURRENT APPEAL

On April 21, 2011, Merit Partners I and Merit Partners III filed suit against Lakota seeking a declaration of what was conveyed in each conveyance and to quiet title in the Exhibit A leases. In the alternative to their request for the trial court to declare and quiet title, Merit Partners I and Merit Partners III sought reformation of the Wise County conveyance and restitution. *See* Tex. R. Civ. P. 48. They also pleaded for the recovery of their reasonable and necessary attorney's fees under the Uniform Declaratory Judgments Act (the UDJA). *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2015). Lakota answered and filed counterclaims seeking to remove the cloud on and quiet title to the Exhibit A leases. *See* Tex. R. Civ. P. 97. Lakota also raised counterclaims for violations of the Texas Natural Resources Code, trespass, conversion, and conspiracy to commit trespass and conversion. Lakota then filed a third-party petition against Merit Energy, alleging that Merit Energy failed to pay its share of the mineral proceeds to Lakota. *See* Tex. R. Civ. P. 38(a). Merit Partners I and Merit Partners III filed several "counter-counterclaims" in response to Lakota's counterclaims, but raised them in the alternative to the claims raised in their

7

petition: adverse possession, a declaration of rights under the conveyances, breach of contract, and contractual indemnity. They also sought their attorney's fees. Merit Energy filed an unjust-enrichment counterclaim to Lakota's third-party petition.

The parties filed several summary-judgment motions, and it appears that the trial court orally denied each motion at a pretrial hearing, occurring eight days before the first day of trial. After a four-day trial, a jury found that the conveyances did not convey the disputed property interests to Lakota.[5]

Merit moved for entry of judgment on the jury's verdict and filed a motion for an award of attorney's fees.[6] To its motion for attorney's fees, Merit attached billing records and its counsel's affidavit in which counsel averred Merit had incurred $855,886 in attorney's fees. Lakota responded that Merit was not entitled to an award of attorney's fees because the UDJA precluded such an award in title disputes. Lakota also argued in its response to Merit's motion for attorney's fees that an award of attorney's fees would be neither equitable nor just based on Merit's discovery abuse. Lakota filed a motion for new trial and raised six grounds that it contended justified a new trial, including that the trial court erred by asking the jury what the conveyances actually conveyed because

---

[5]The jury made no other findings because the other jury questions were conditional on a yes response to the first question.

[6]During trial, the parties agreed to submit their respective requests for attorney's fees to the court.

"the Conveyances were unambiguous and should have been interpreted by the Court as a matter of law" and that there was insufficient evidence to support the jury's answer. *See* Tex. R. Civ. P. 320. Lakota also filed a motion for judgment non obstante veredicto (JNOV), arguing that there was no evidence to support the jury's finding because the conveyances were unambiguous as a matter of law and, therefore, the issue was not one for a jury. *See* Tex. R. Civ. P. 301.

The trial court denied Lakota's post-verdict motions. On January 18, 2013, the trial court entered final judgment in favor of Merit, quieting title in Merit to the Exhibit A leases, and awarded Merit "all costs of court as allowed by law." Merit's bill of costs totaled $12,584.11. The record does not reflect that the trial court expressly ruled on Merit's motion for attorney's fees, but the judgment did not award attorney's fees to Merit.

Both Merit and Lakota appeal from the trial court's judgment. Lakota argues that the trial court erred by submitting the interpretation of the conveyances to a jury and, alternatively, abused its discretion by admitting inadmissible expert testimony during the trial. Merit contends that the trial court erred and abused its discretion by failing to award it attorney's fees under the UDJA.

## II. SUBMISSION OF SCOPE OF CONVEYANCES

In its first issue on appeal, Lakota asserts that the conveyances were unambiguous and clearly conveyed the disputed interests in the Exhibit A leases—all interests, whether working, operating, or not—to the extent the

9

Exhibit A leases covered lands lying in a pooled unit. Therefore, Lakota contends that the trial court was required to interpret the unambiguous conveyances as a matter of law and erred by submitting this legal issue to the jury.

Merit argues that Lakota either failed to preserve any error regarding this argument or invited the error by submitting a substantially similar jury question for inclusion into the court's charge. Indeed, Lakota, in its proposed jury charge, requested that the jury determine whether "the Wise County Conveyance transfer[red] and convey[ed] to Lakota all right, title and interest of the Merit Partners in the McDermott Unit Acreage."[7] This was substantially the same as the question included in the court's charge: "Do you find that the Conveyances conveyed the Disputed Property Interests to Lakota?" At the charge conference, Lakota did not object to this question on any basis. Lakota's acquiescence to and affirmative request for the complained of question invited the error Lakota now complains of; thus, Lakota cannot now assert that the trial court committed error by giving Lakota exactly what it asked for. *See C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 785 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("A party fails to preserve error in the jury charge when that party waives, or invites, the alleged error by acquiescing to [or] submitting a theory that the party

---

[7]Merit also submitted a proposed question asking the jury to interpret the conveyances. But Merit's submission was conditional to its position that the conveyances were unambiguous and must be interpreted by the court as a matter of law.

10

later claims is erroneous. . . . Similarly, a party waives claimed error in the charge when that party proposes to submit a substantially similar charge to the jury."); *cf. Glattly v. Air Starter Components, Inc.*, 332 S.W.3d 620, 639–40 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (holding invited-error doctrine precluded party from asserting contract was nondisclosure agreement when party had consistently maintained in judicial proceedings that contract was covenant not to compete).

The first time Lakota clearly and directly raised its argument that the construction of the unambiguous conveyances was solely an issue for the trial court was in its post-verdict motions.[8] This was too late to preserve any error arising from the submission of this issue to the jury. *See* Tex. R. Civ. P. 274 ("*Any* complaint as to a question, definition, or instruction, on account of *any* defect, omission, or fault in pleading, is waived unless specifically included in the objections [to the charge]." (emphases added)). When the trial court must resolve a legal issue before the jury can properly perform its fact-finding function, a party must raise an objection in time for the trial court to make an appropriate ruling without having to order a new trial. *See Holland v. Wal-Mart Stores, Inc.*,

---

[8]Although we agree with Lakota that its post-verdict filings preserved any "sufficiency challenge" to the jury's finding, Lakota does not argue on appeal that the evidence, apart from the challenged expert testimony, was insufficient to support the jury's finding. *See* Tex. R. Civ. P. 279. Lakota's argument on appeal is that the trial court "erroneously outsourced the job of interpreting the documents to the jury." Indeed, Lakota fails in its opening brief to recite the applicable standards and scope of review for an evidentiary challenge or to discuss the evidence in light of those standards.

11

1 S.W.3d 91, 94 (Tex. 1999) (op. on reh'g); *Catalanotto v. Meador Oldsmobile LLC*, No. 02-10-00044-CV, 2011 WL 754413, at *8 (Tex. App.—Fort Worth Mar. 3, 2011, no pet.) (mem. op.). Many legal rulings require timely objection before submission to the jury to preserve error for appeal. *See Damian v. Bell Helicopter Textron, Inc.*, 352 S.W.3d 124, 141 (Tex. App.—Fort Worth 2011, pet. denied). The submission to the jury of the interpretation of the conveyances was an issue that Lakota must have raised before it was submitted to the jury to preserve any error. *See, e.g.*, *Catalanotto*, 2011 WL 754413, at *8 (determining party waived error by failing to object to submission of contract-formation question to jury even though party raised issue in motion for JNOV); *Calce v. Dorado Expl., Inc.*, 309 S.W.3d 719, 749 (Tex. App.—Dallas 2010, no pet.) ("By not objecting to [the] question [regarding the correct interpretation of parties' fee agreement in] the charge of the court, Appellants failed to preserve error as to resolution of that issue by the jury."); *JPMorgan Chase Bank, N.A. v. Prof'l Pharmacy II*, No. 02-11-00373-CV, 2014 WL 7473779, at *6–8 (Tex. App.—Fort Worth Dec. 31, 2014) (holding appellate complaint regarding jury charge's assumption of plaintiff's capacity waived because defendant failed to object to the charge on that basis even though defendant raised the issue pretrial and submitted proposed jury instruction on partnership factors), *appeal dismissed per stipulation*, No. 02-11-00373-CV, 2015 WL 1119894, at *1 (Tex. App.—Fort Worth Mar. 12, 2015, no pet.) (mem. op.) (declining to withdraw issued opinion under Tex. R. App. P. 42.1(c)); *Damian*, 352 S.W.3d at 141 (holding party's

12

failure to object to the charge on the basis that questions as submitted assumed legal capacity of party's representative waived any error even though issue raised in motion for new trial).

Lakota argues that the trial court "plainly knew of Lakota's position on interpretation" and points to the trial court's denial of its summary judgment, statements in the joint pretrial order, and statements by Merit's counsel at a pretrial hearing. We will not consider any statements in the joint pretrial order to show preservation because that order was neither dated nor signed by the trial court and cannot operate as notice to the court of Lakota's argument. *See* Tex. R. Civ. P. 166, 306a.2; *cf. In re Bill Heard Chevrolet, Ltd.*, 209 S.W.3d 311, 314–15 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding) (recognizing orders generally must be in writing and signed by the trial court to be entered of record and, thus, to be effective). Even if the proposed, unsigned joint pretrial order were considered, only Merit asserted in the proposed order that the trial court should interpret the conveyances as a matter of law.

The parties' "clash[]" on summary judgment, as described by Lakota, also did not preserve Lakota's jury-charge complaint. Although Lakota and Merit raised arguments on summary judgment regarding whether the conveyances were ambiguous or unambiguous and whether surrounding circumstances could be looked to as interpretation aids, these arguments did not alert the trial court that Lakota's position was that the issue could not be submitted to the jury or that Lakota was affirmatively asking the trial court, not a jury, to make that

13

determination. *Cf. Wackenhut Corp. v. Gutierrez*, 453 S.W.3d 917, 920 n.3 (Tex. 2015) ("And a denied pretrial no-evidence motion for summary judgment does not preserve a no-evidence objection to a question in the jury charge, as the latter is premised on the evidence (or lack thereof) presented at trial and thus cannot properly be asserted before trial."); *cf., e.g.*, *Streber v. Hunter*, 221 F.3d 701, 720–22 (5th Cir. 2000) (holding defendant's failure to move for judgment as a matter of law at the close of all the evidence excused because defendant raised its arguments in motion for summary judgment, had previously so moved at the close of plaintiff's case in chief, and had objected to the jury charge on the same bases).

Similarly unavailing for preservation purposes are Merit's counsel's statements at a pretrial hearing. Before trial, Lakota filed a motion in limine asking that witnesses not be allowed to refer to "any circumstances surrounding the . . . auction . . . to show that the terms of the Conveyances vary from their plain meaning."[9] At the pretrial hearing, while discussing Lakota's motion in limine, Lakota's counsel stated that because the trial court had denied its motion for summary judgment, it withdrew this portion of its motion in limine. After the trial court confirmed that it had indeed denied Lakota's motion for summary

---

[9]This motion in limine did not preserve for our review Lakota's argument that the interpretation of the conveyances was a legal issue for the trial court and, thus, should not have been submitted to the jury. *Cf. Wackenhut*, 453 S.W.3d at 920 n.3 (noting motion in limine does not preserve error regarding subsequent admission of evidence at trial).

14

judgment, Merit's counsel stated, "So the Court prior to trial is not going to construe the conveyances as a matter of law." The trial court stated that the issue would be "up to the jury." Merit's counsel continued and reasserted that the interpretation of the conveyances was a question of law for the court and asked if the conveyances were ambiguous. The trial court stated, "You've got my ruling." Merit's counsel's statements at the hearing cannot preserve Lakota's appellate assertion that the issue should not have been submitted in the jury charge. *Cf. Austin v. Weems*, 337 S.W.3d 415, 421 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("[A] party fails to preserve error [in the admission of evidence] if it does not object to the same or similar evidence that is offered by the opposing party."). Indeed, the trial court may well have determined that by withdrawing its limine request and later requesting a jury question interpreting the scope of the conveyances, Lakota believed the issue was one for the jury. *See C.M. Asfahl*, 135 S.W.3d at 785–86.

Preservation of error is neither "medieval" nor a tool by which Merit may "escape review," as Lakota argues. Preservation requirements "are technical, but not trivial" and protect "important prudential considerations." *Burbage v. Burbage*, 447 S.W.3d 249, 258 (Tex. 2014); *see also In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003) (explaining underpinnings and importance of preservation rules), *cert. denied*, 541 U.S. 945 (2004). And while we should not be over technical in their application, we cannot ignore that Lakota (1) failed to bring its argument to the trial court's attention at a time when the trial court could

15

ameliorate any error short of granting a new trial and (2) affirmatively invited the error by requesting a substantially similar question to the one it now argues was error. *See Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 863 (Tex. 2005); *Haler v. Boyington Capital Grp., Inc.*, 411 S.W.3d 631, 637 (Tex. App.—Dallas 2013, pet. denied); *Catalanotto*, 2011 WL 754413, at *8. We conclude that Lakota invited the error it complains of on appeal and, similarly, waived its right to have this court consider the issue. *See Gen. Chem. Corp. v. De La Lastra*, 852 S.W.2d 916, 920 (Tex.) (stressing that "[p]arties may not invite error by requesting an issue and then objecting to its submission"), *cert. dismissed*, 510 U.S. 985 (1993); *Ne. Tex. Motor Lines, Inc. v. Hodges*, 158 S.W.2d 487, 488 (Tex. 1942) (holding "a litigant cannot ask something of a court and then complain that the court committed error in giving it to him"). We overrule Lakota's first issue.[10]

---

[10]Even if Lakota did not waive or invite any error, we would find no merit to Lakota's first issue. By submitting this issue to the jury as requested by Lakota, the trial court implicitly concluded that the conveyances were reasonably susceptible to more than one interpretation and, thus, were ambiguous. *See Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 705 (Tex. 2008). If the trial court erred by so concluding, the plain language of the four corners of the unambiguous conveyances, as a matter of contract construction, did not transfer leasehold interests as found by the jury, rendering this error harmless. *See* Tex. R. App. P. 44.1(a); *see, e.g., Ashford Partners, Ltd. v. ECO Res., Inc.*, 401 S.W.3d 35, 38–39 (Tex. 2012); *Victory Energy Corp. v. Oz Gas Corp.*, 461 S.W.3d 159, 172–74 (Tex. App.—El Paso 2014, pet. denied). If, on the other hand, the trial court correctly concluded that the conveyances were ambiguous, the evidence at trial sufficiently supported the jury's determination that the ambiguous conveyances were limited to nonleasehold interests. *See Ashford*, 401 S.W.3d at 38–39; *Brown v. Havard*, 593 S.W.2d 939, 942 (Tex. 1980).

## III. ADMISSION OF EXPERT TESTIMONY

In its second issue, Lakota argues that even if the conveyances were ambiguous—necessitating a jury finding on their meaning—the trial court abused its discretion by admitting expert testimony on the correct interpretation of the conveyances, which is a "pure question of law." At trial, Merit called landman Craig Young and attorney Alan B. Cummings to testify regarding what interests Merit intended to sell at the auction based on the language of the conveyances. Both Young and Cummings testified, in response to questions posed by both Merit and Lakota, that Merit sold nonoperating interests in the conveyances.[11]

Merit argues that Lakota failed to preserve any error by not objecting to this testimony at the time it was introduced at trial. Before trial, Lakota filed motions to exclude Young's and Cummings's testimony, arguing that because the interpretation of the conveyances was a question of law, it was not amenable to expert testimony. The trial court denied the motion to exclude Cummings's testimony. As to Young's testimony, the trial court denied the motion to exclude "except as to his opinions or interpretations." Before Young and Cummings testified, it is undisputed that Lakota renewed its objections in general, which the trial court overruled. Lakota's motions to exclude preserved any error in the admission of this evidence at trial on the bases it raised in the motions.

---

[11]Indeed, many of Young's and Cummings's statements that Lakota challenges on appeal were elicited in response to Lakota's questioning on cross-examination.

*See Austin*, 337 S.W.3d at 421–22. Lakota was not required to again object once the evidence was proffered at trial. Thus, this issue is preserved for our review.

But evidentiary rulings do not justify reversal unless the whole case turns on the evidence improperly admitted, which requires that the erroneously admitted evidence controlled the judgment. *See Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989); *Huckaby v. A.G. Perry & Son, Inc.*, 20 S.W.3d 194, 206 (Tex. App.—Texarkana 2000, pet. denied) (op. on reh'g). *See generally* Tex. R. App. P. 44.1(a) (stating standard for reversible error). Here, several witnesses other than Young and Cummings testified that Merit intended to convey and did convey only nonoperating interests in the conveyances. Other witnesses testified that the conveyances conveyed leasehold or operating interests—more than mere royalty interests. Young's and Cummings's testimony that only nonoperating interests were conveyed, which was partially elicited in response to Lakota's questioning, was cumulative of other unchallenged evidence admitted on the issue, and Merit did not unduly emphasize Young's and Cummings's testimony. *See, e.g.*, *Direct Value, L.L.C. v. Stock Bldg. Supply, L.L.C.*, 388 S.W.3d 386, 395 (Tex. App.—Amarillo 2012, no pet.); *Richmond Condos. v. Skipworth Commercial Plumbing, Inc.*, 245 S.W.3d 646, 666–67 (Tex. App.—Fort Worth 2008, pet. denied) (op. on reh'g); *A.G.E., Inc. v. Buford*, 105 S.W.3d 667, 677–78 (Tex. App.—Austin 2003, pet. denied). Therefore, the jury's verdict was not controlled by the challenged

18

evidence and its admission, even if in error, was harmless. *See GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 620 (Tex. 1999); *Espinoza v. Stivors*, No. 13-11-00292-CV, 2012 WL 256135, at *1–2 (Tex. App.—Corpus Christi Jan. 26, 2012, no pet.) (mem. op.); *Niche Oilfield Servs., LLC v. Carter*, 331 S.W.3d 563, 575 (Tex. App.—Houston [14th Dist.] 2011, no pet.). We overrule Lakota's second issue.

## IV. ATTORNEY'S FEES

In its first issue on appeal, Merit argues that the trial court erred by failing to award it attorney's fees based on its claim for declaratory relief because the construction of the conveyances did not implicate title to the mineral interests at issue. Merit asserts in its second issue that because an award of attorney's fees was authorized under the UDJA, the trial court abused its discretion by awarding none in light of Merit's submitted evidence of equitable and just attorney's fees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009.

As we previously stated, Merit filed a motion for attorney's fees, which Lakota disputed on the basis that the UDJA precluded such an award in title disputes. Lakota argued that Merit's suit was in effect a suit to try or quiet title, which does not allow for the recovery of attorney's fees. *See* Tex. Prop. Code Ann. § 22.001 (West 2014); *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 926 (Tex. 2013); *Shelton v. Kalbow*, 489 S.W.3d 32, 56 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). The trial court did not expressly

rule on Merit's motion, but the judgment did not include an attorney's fee award.[12] The parties previously had agreed to submit any fee issue to the court; however, Merit did not request findings of fact and conclusions of law on this issue. *See* Tex. R. Civ. P. 296 (providing for request for findings and conclusions in "any case tried . . . without a jury"); *Heafner & Assocs. v. Koecher*, 851 S.W.2d 309, 313 (Tex. App.—Houston [1st Dist.] 1992, no writ) (concluding party had right to findings and conclusions under rule 296 where issue of attorney's fees was tried to the trial court). As such, the trial court's judgment failing to award attorney's fees implies all findings of fact necessary to support it. *See Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003).

A trespass-to-try-title action deals with possessory interests and is the sole method by which title to "lands, tenements, or other real property" is determined. Tex. Prop. Code Ann. § 22.001(a); *see Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 389 (Tex. 2011). By its suit, Merit claimed ownership of or title to operating, working interests in the minerals encompassed by the conveyances and sought to remove the clouds on the titles to these mineral fee estates.[13] Indeed, the trial court's final judgment quieted title in Merit to the

---

[12]At a hearing on the parties' post-verdict motions, the trial court stated that it would "carry the question of attorneys' fees and review the material that's been submitted." The parties had agreed not only that the trial court would determine any attorney's-fee request but also that the issue would be decided on the basis of filed proof and not live testimony.

[13]In pleading its claim for declaratory relief, Merit entitled that section of its petition "**Declaratory Relief & Quieting Title**." Merit also requested that the trial

Exhibit A leases, stating that Lakota "owns none of the working interest" under any of the Exhibit A leases or the Foxall and McDermott "Unit[s]."

An operating, working interest or the "right to produce, exploit, and participate in the production of the minerals was and is a possessory interest in real property." *MCT Energy, Ltd. v. Collins*, No. 07-13-00304-CV, 2014 WL 5422918, at *3 (Tex. App.—Amarillo Oct. 21, 2014, no pet.) (mem. op.); *cf. Richmond v. Wells*, 395 S.W.3d 262, 266–67 (Tex. App.—Eastland 2012, no pet.) (noting royalty interest and possibility of reverter in mineral lease was nonpossessory interest and that such interests "are not proper subjects of a trespass-to-try-title action"); *Ramsey v. Grizzle*, 313 S.W.3d 498, 503 n.2 (Tex. App.—Texarkana 2010, no pet.) ("A nonpossessory interest such as [a] royalty interest is not a proper matter for resolution by trespass to try title."). Because Merit sought clear title to a possessory interest in the mineral fee estates at issue, its rights must have been adjudicated as a trespass to try title. *See Biltex Enters., Inc. v. Myers*, No. 02-13-00465-CV, 2015 WL 1967285, at *4 (Tex. App.—Fort Worth Apr. 30, 2015, no pet.) (mem. op.) ("This case involves competing claims to the mineral estate, and every substantive issue was resolved by the jury[] . . . . This case did not involve the construction of the lease

court "remove the cloud on [Merit's] title to the Subject Leases created by [Lakota's] erroneous interpretation of the Conveyances and declare" that the conveyances conveyed only nonoperating interests. In its prayer for relief, Merit asked "for declaratory and equitable relief declaring [Merit's] claims as to the Subject Leases invalid and quieting [Merit's] title all as requested [in its cause of action for declaratory relief and to quiet title]."

or a determination of the parties' rights and obligations thereunder. Both of Myers's requests for declaratory relief are, in essence, title determinations."); *Archaeological Conservancy v. Wilson Land & Cattle Co.*, No. 03-08-00061-CV, 2010 WL 1253576, at *6 (Tex. App.—Austin Mar. 30, 2010, no pet.) (mem. op.) (holding although plaintiff sought construction of the terms of a deed and sought a declaration of the meaning of a reverter clause, the "heart of the dispute" showed it was a "means to determine title" and must be brought as trespass to try title and not under UDJA). And although the UDJA provided a procedural method for the construction or validity of the conveyances at issue and to quiet title in Merit, Merit's substantive rights are governed by the trespass-to-try-title statutes. *See Jordan v. Bustamante*, 158 S.W.3d 29, 35 (Tex. App.—Houston [14th Dist.] 2005, pet. denied); *see also Martin v. Amerman*, 133 S.W.3d 262, 267 (Tex. 2004); *Koch v. Tex. Gen. Land Office*, 273 S.W.3d 451, 456–57 (Tex. App.—Austin 2008, pet. denied). Thus, this was in effect a suit to quiet title governed by the trespass-to-try-title statutes, rendering Merit's request for attorney's fees inappropriate. *See Acrey v. Langston Land Partners, LP*, No. 11-14-00025-CV, 2016 WL 1725371, at *6 (Tex. App.—Eastland Apr. 29, 2016, no pet.) (mem. op.) ("[A] party cannot recover attorney's fees under the [UDJA] when the only issues, aside from attorney's fees, concern clearing of title or trespass to try title."); *Cameron Cty. v. Tompkins*, 422 S.W.3d 789, 797–99 (Tex. App.—Corpus Christi 2013, pets. denied) (explaining suit to quiet title and suit for trespass to try title are actions to recover possession of land unlawfully withheld

22

and concluding suit to quiet title actually was a claim for title that could not be brought under the UDJA). We overrule Merit's first issue.

We need not address Merit's second issue because we have found Merit was not entitled to attorney's fees based on its claim as pleaded, which implicated title to a possessory interest in the mineral fee estates. *See* Tex. R. App. P. 47.1. However, even if Merit's claim were appropriately cast as one arising under and not incidental to the UDJA, attorney's fees under the UDJA are discretionary. *See Bocquet v. Herring*, 972 S.W.2d 19, 20–21 (Tex. 1998). Absent the appropriate findings, we would be unable to conclude that the trial court abused its discretion by awarding no attorney's fees. *See Unified Loans, Inc. v. Pettijohn*, 955 S.W.2d 649, 654–55 (Tex. App.—Austin 1997, no pet.). Thus, Merit's second issue is similarly unavailing.

## V. CONCLUSION

By affirmatively requesting that the jury decide the appropriate construction of the conveyances at issue and by not objecting to such submission, Lakota invited and waived any error caused by the trial court's submission of that issue in the jury charge. Although Lakota preserved for our review its argument that the trial court abused its discretion by admitting Merit's expert testimony regarding the appropriate interpretation of the conveyances, the evidence was cumulative, rendering any error harmless. Finally, Merit was not entitled to recover attorney's fees in its suit to declare title to a possessory interest in the mineral estates. Even if Merit's suit did not attempt to adjudicate title to a

23

possessory interest, Merit cannot show the trial court abused its discretion by failing to award attorney's fees under the UDJA in the absence of findings on the issue. For these reasons, we overrule the issues presented to us by the parties and affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: DAUPHINOT, MEIER, and GABRIEL, JJ.

DELIVERED: November 17, 2016