**Affirmed and Memorandum Opinion filed December 8, 2022.**



In The

# Fourteenth Court of Appeals

### NO. 14-22-00431-CV

## IN THE INTEREST OF I.R.Z, A CHILD

**On Appeal from the 313th District
Court Harris County, Texas
Trial Court Cause No. 2021-00864J**

## MEMORANDUM OPINION

Appellant D.P. (Mother) appeals the trial court's final decree terminating her parental rights to I.R.Z (Isaac). The trial court terminated Mother's parental rights under Sections 161.001(b)(1)(D), (E), (N), and (O) of the Family Code and concluded that termination was in the best interest of Isaac. *See* Tex. Fam. Code §§ 161.001(b)(1)(D), (E), (N), & (O); 161.001(b)(2). Mother challenges the trial court's final decree, arguing the evidence is legally and factually insufficient to

support the trial court's findings.[1]  Mother also challenges whether the evidence established that she was unable to complete her services.  We affirm.

## BACKGROUND

Isaac was born to Mother and father in May 2021.  While in the hospital for Isaac's birth, both Mother and Isaac tested positive for cocaine and opiates.  Mother also tested positive for benzos and marijuana at that time.  Isaac was placed in the neonatal intensive care unit (NICU) for two weeks because he was exhibiting symptoms of withdrawal.  Isaac was reportedly agitated, had a high heart rate, and was jittery.  Mother and father visited Isaac while he was in the NICU.

Upon discharge, from approximately June to November 2021, Isaac was placed with a foster family.  Mother and father did not visit or attempt to visit Isaac during this time.  In October 2021 through the time of trial, Mother was in jail awaiting trial.  Mother has not seen Isaac since he was two weeks old.  In November 2021, Isaac's paternal grandmother took Isaac into her care.  Mother and father's daughter is also in grandmother's care.  At the time of trial, Isaac was living with grandmother.

At trial, an early childhood interventionist testified that she began working with Isaac when he was approximately one month old.  At the time of trial in April 2022, Isaac was about eleven months old.  The interventionist testified that Isaac was developmentally delayed in his gross motor skills of crawling, rolling, and sitting.  Isaac was also delayed in fine motor skills such as his ability to use his hands and fingers.  The interventionist testified without objection that Isaac experienced substance exposure in utero and that he had spent time in the NICU before being

---

[1] Father's parental rights were also terminated but he does not appeal the trial court's final decree.

discharged. The childhood interventionist testified that the potential cause of Isaac's delays was the substance exposure, but she was not qualified to provide an opinion on the cause. Her recommendation was to refer Isaac to a neurologist to address the issues that she was seeing with Isaac's development and to determine the root cause.

The interventionist also testified that Isaac suffered from plagiocephaly and brachycephaly, and Isaac's plagiocephaly was "severe." The interventionist testified that Isaac's grandmother has secured the necessary medical interventions to address the plagiocephaly. Grandmother is also working "diligently" on Isaac's gross and fine motor skills and is following through with all the interventionist's recommendations and strategies for Isaac.

A conservatorship worker testified, without objection, that Isaac "came into care" because he and Mother tested positive at birth for cocaine and opiates. The worker testified that Mother tested positive for benzos and marijuana in addition to the opiates and cocaine. The worker also testified that Isaac exhibited symptoms of withdrawal and that he was placed in the NICU and given morphine to relieve his symptoms. She testified that Mother and father did not visit Isaac once he was discharged but that Mother did request photos of Isaac. Isaac has been with his grandmother since he was six-months old.

The worker also testified that a parenting plan was created for Mother in late-May, early-June 2021. The worker attempted to engage Mother in services through calls and text messages, but most of the attempts went unanswered. The worker testified that she submitted referrals to Mother for services prior to Mother's incarceration and Mother did not attend. The worker was not able to provide Mother with her plan until early 2022. Mother's plan involved parenting classes, a psychological examination, individual therapy, a substance abuse assessment, "case involvement," stable housing, legal income, random drug screening, and narcotics

or alcoholics anonymous. All of these services were ordered by the trial court. and none were completed by Mother. The worker testified that she met with Mother in jail and reviewed the plan with Mother, but because she could not physically hand Mother the plan in the jail, the worker also emailed the plan to her. Mother did not indicate to the worker that Mother had any questions about the plan. The worker testified that Mother attempted to complete a parenting course while in jail but was discharged for non-compliance. The worker testified that Mother could have completed some of the plan from jail and that there is a "kiosk" in the jail that Mother could have used to register for different services. The kiosk is where Mother would have registered for the parenting class she started while incarcerated. The worker testified that other than the parenting class and the psychological evaluation, she was not sure what other services Mother could complete from jail. The worker agreed that Mother did seem interested in Isaac and seeing her child but was unable to do so from jail.

The worker testified that Mother's other children did not reside with her and were in the care of others, but the worker was not sure about the legal status of those children and whether Mother's parental rights had been terminated. The worker testified that Isaac and grandmother have bonded and that grandmother takes Isaac to all his appointments and provides for his needs. There are no concerns about Isaac's placement with grandmother, and Isaac is well taken care of.

Mother testified that at the time of trial she was incarcerated for an aggravated robbery with a deadly weapon charge. Her "understanding" of why Isaac came into the Department's care was because Isaac and she were positive for cocaine and opiates. Mother testified that she took prenatal vitamins but did not have a medical provider during her pregnancy. Mother testified that she visited Isaac while he was in the NICU but not at all once he was in foster care. The last time she saw Isaac

4

was when he was two weeks old. Mother testified that the caseworker reached out and attempted to engage Mother in both visits and services, that she did not engage in services, and that she tried to visit Isaac. Mother also testified that she did not submit to any drug testing. Mother further testified that Isaac is well cared for by his grandmother and all of his needs are being met. Prior to Isaac's birth, Mother testified that she stayed in hotels and had completed a jail sentence, gotten "clean," and, once home, relapsed.

Mother testified that during her current incarceration she had completed "about a month and a half" of a ninety-day program called "Mentoring Moms." Mother was participating in "AA" but there were no other services she could complete while in jail. Mother testified that she did not know whether she could or needed to complete a psychiatric evaluation from jail. Mother did not believe that terminating her rights was in Isaac's best interest because she wanted "to do anything possible to be part of his life and not have [her] parental rights revoked because [she is] willing to do whatever it takes . . . to be his parent." Mother's testified her incarceration meant she did not "have the option" to do what she needed to do to get Isaac back. Mother stated that her plan is to obtain employment and stable housing and to be part of Isaac's life once released.

When asked whether she had used any substances during her pregnancy with Isaac while she knew she was pregnant, Mother invoked her Fifth Amendment right and refused to answer. When asked whether she used any illegal drugs while pregnant with Isaac, Mother invoked her Fifth Amendment right and refused to answer. When asked whether Mother has "a criminal history" in the state of New Jersey, Mother invoked her Fifth Amendment right and refused to answer.

Father testified that Isaac came into care due to "substance abuse issues" but asserted his Fifth Amendment right when questioned directly about Mother's substance abuse while pregnant.

An advocacy supervisor testified that termination is in the best interest of Isaac because of Isaac's age and vulnerability due to his "extensive and immediate care needs" that are unable to be met by his parents. The supervisor also testified that grandmother has shown she can provide for these needs. She testified that grandmother's home is safe, Isaac has his own room, and his basic needs are being met. The supervisor testified that Mother has not provided any kind of assistance to Isaac.

Grandmother testified that Isaac had been in her care for five months at the time of trial. Grandmother is Isaac's paternal grandmother and also is the caregiver of Isaac's older sister. The older sister is also a child of Mother and father and subject to a prior family case in New Jersey. Grandmother testified that Isaac had bonded with her, his older sister, and grandmother's life partner. Grandmother stays home with the children and takes Isaac to all of his medical appointments. Grandmother testified that she is willing to adopt Isaac and that her life partner is agreeable to that. Grandmother indicated that she had the financial means to take care of Isaac.

## PREDICATE GROUND FOR TERMINATION

In four issues, Mother argues that the evidence is legally and factually insufficient to support termination of her parental rights under Section 161.001(b)(1)(D), (E), (N) and (O).

## A. General Legal Principles

Parents' rights to raise and nurture their children are protected by the United States Constitution and the Texas Constitution. *In re J.F.-G.*, 627 S.W.3d 304, 311 (Tex. 2021). To deny a parent these rights, the State must establish by clear and convincing evidence both a legal ground to terminate the parent's right and that the termination is in the best interest of the child. *Id.*; *see also* Tex. Fam. Code § 161.001.

While this high evidentiary burden requires a heightened standard of review on appeal, it does not dispel the deference that an appellate court must grant to the fact finder. *In re J.F.-G.*, 627 S.W.3d at 311–12. This review "take[s] into consideration whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the matter on which the State bears the burden of proof." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). Even in parental termination cases, the appellate court must defer to the trial court's factual determinations because the fact finder is the sole arbiter of the witnesses' credibility and demeanor. *In re J.F.-G.*, 627 S.W.3d at 312. We assume the fact finder resolved conflicting evidence in favor of its finding if a reasonable fact finder could do so. *Id.* We disregard all evidence that a reasonable fact finder could have disbelieved. *Id.*

"Evidence is legally sufficient if, viewing all the evidence in the light most favorable to the fact-finding and considering undisputed contrary evidence, a reasonable factfinder could form a firm belief or conviction that the finding was true." *In re A.C.*, 560 S.W.3d 634, 631 (Tex. 2018). "Factual sufficiency . . . requires weighing disputed evidence contrary to the finding against all the evidence favoring the finding." *Id.* The court must consider whether disputed evidence "is such that a reasonable factfinder could not have resolved it in favor of the finding." *Id.*

7

To terminate a parent's legal rights to a child, Section 161.001 of the Family Code requires two findings: (1) the parent's acts or omissions must satisfy an enumerated statutory ground for termination; and (2) termination must be in the child's best interest. *See* Tex. Fam. Code §161.001; *see also In re J.F.-G.*, 627 S.W.3d at 312. There are twenty-one possible grounds for termination. *See* Tex. Fam. Code § 161.001(b)(1). Only one predicate finding under Section 161.001(b) is necessary to support a final order of termination when there is also a finding that termination is in the best interest of the child. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re F.M.E.A.F.*, 572 S.W.3d 716, 736 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). If we conclude that there is sufficient evidence to support one of the predicate findings, generally we need not address the other predicate findings. *In re F.M.E.A.F.*, 572 S.W.3d at 736. However, because termination under Section 161.001(b)(1)(D) or (E) may have implications for a parent's rights to other children, we must independently address issues challenging a trial court's findings under those subsections. *In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019). Accordingly, we first consider Mother's sufficiency challenge to the trial court's findings regarding subsections (D) and (E), and only if such findings cannot be sustained, we will consider whether statutory grounds for termination exist under subsections (N) and (O). *See generally* Tex. R. App. P. 47.1.

Under subsection (D), the endangerment analysis focuses on the evidence of the child's physical environment, although the environment produced by the conduct of the parents bears on the determination of whether the child's surroundings threaten his well-being. *In re D.M.K.*, No. 14-13-00230-CV, 2013 WL 5347392, at *10 (Tex. App.—Houston [14th Dist.] Aug. 27, 2013, no pet.) (mem. op.). Under subsection (D), we examine the evidence related to the environment of the children to determine whether the environment was the source of endangerment to the

children's physical or emotional well-being. *In re K.A.S., J.G.S., and W.S., II*, 131 S.W.3d 215, 222 (Tex. App.—Fort Worth 2004, pet. denied).

Under subsection (E), a court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent engaged in conduct which endangers the physical or emotional well-being of the child. Tex. Fam Code § 161.001(b)(1)(E). The term "endanger" means the child was exposed to loss or injury or jeopardized. *In re C.A.B.*, 289 S.W.3d 874, 882 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). Endangerment encompasses more than a threat of metaphysical injury or possible ill effects of a less-than-ideal environment. *Id.* (citing *Boyd*, 727 S.W.2d at 533). The statute does not require that conduct be directed at a child or cause actual harm; rather, it is sufficient if the conduct endangers the emotional well-being of the child. *In re J.F.-G.*, 627 S.W.3d at 312. Termination under subsection (E) must be based on more than a single act or omission; the evidence must demonstrate a voluntary, deliberate, and conscious course of conduct by the parent. *In re E.R.W.*, 528 S.W.3d 251, 264 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

## B. Analysis

Mother argues that there is legally and factually insufficient evidence to support termination under subsection (D) because under this subsection the trial court must examine the conditions prior to the child's removal. Mother argues that because the child was removed from her care at birth, the State cannot establish this ground because she never had the child in her custody and could not have endangered him before he was born. Mother argues that because both parents have had only hospital visits with Isaac and had no say regarding his living conditions, this predicate ground for termination was not met. Mother also argues that there is

legally and factually insufficient evidence to support termination under subsection (E) because the State failed "to prove that Mother engaged in any conduct that harmed the child." Mother argues that the evidence pertaining to her substance abuse while she was pregnant is "non-existent."

At trial, Mother testified and admitted that she was "aware" Isaac came into the Department's care because she and Isaac tested positive for cocaine and opiates. Mother did not deny the use of illegal drugs while pregnant and instead invoked the Fifth Amendment. Other witnesses also similarly testified, without objection, that Isaac and Mother both tested positive for drugs at the time of Isaac's birth. Exhibit 18 indicates that Isaac was "born positive for multiple drugs and was diagnosed with Neonatal Abstinence Syndrome by a physician after birth. He was hospitalized for two weeks after birth and placed on morphine to ween him off the drugs." Multiple witnesses testified, without objection, to Isaac's stay in the NICU immediately after his birth because of his positive drug test and his drug exposure. Viewing this evidence in the light most favorable to the judgment, this evidence supports the trial court's finding of endangerment. *See In re M.J.*, No. 14-20-00449-CV, 2020 WL 7038526, at *6 (Tex. App.—Houston [14th Dist.] Dec. 1, 2020, no pet.) (mem. op.) ("[A] mother's drug abuse during pregnancy is particularly endangering to an unborn child's physical well-being."); *In re K.C.B.*, 280 S.W.3d 888, 895 (Tex. App.—Amarillo 2009, pet. denied) ("A mother's use of drugs during pregnancy may be conduct which endangers the physical and emotional well being of the child."); *see also In re A.J.F.*, No. 07-20-00242-CV, 2021 WL 423442, at *3 (Tex. App.—Amarillo 2021, no pet.) (mem. op.) ("At birth, A.J.F. tested positive for the presence of illegal drugs, supporting an inference that S.G.'s drug use created conditions or surroundings that exposed A.J.F. to the substances while *in utero*."); *In re K.A.B.M.*,

551 S.W.3d 275, 287 (Tex. App.—El Paso 2018, no pet.) ("A parent's use of drugs may qualify as an endangering course of conduct.").

Both Mother and father invoked their Fifth Amendment right against self-incrimination when asked about Mother's drug use during her pregnancy with Isaac. The trial court is permitted to make a negative inference based upon the assertion of the privilege. *See In re J.J.*, No. 14-19-00622-CV, 2020 WL 428859, at *6 (Tex. App.—Houston [14th Dist.] Jan. 28, 2020, pet. denied) (mem. op.) ("Mother declined to testify about these charges by asserting her Fifth Amendment right against self-incrimination, permitting the trial court to draw an adverse inference concerning the charges."); *V.C. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-18-00746-CV, 2019 WL 1388725, at *2 (Tex. App.—Austin Mar. 28, 2019, pet. denied) (mem. op.) ("Although a witness may assert her Fifth Amendment right against self-incrimination in a civil trial if she is asked a question that might tend to subject her to criminal responsibility, the jury may make negative inferences based upon the assertion of the privilege.").[2]

While Mother argues that she was not provided with enough time to complete her services and plan, Mother also admitted that she chose not to engage in her services for a period of four months prior to her incarceration. The worker testified that she called and texted Mother about her plan and completing services under the plan. Mother agreed that the worker contacted her about completing services and Mother did not engage in those services under the plan. Mother also testified that she enrolled in a parenting course but failed to complete the course. The worker testified that Mother was discharged from the course for non-compliance. While the

---

[2] "The State may not, however, obtain 'an adverse judgment against a party to a civil proceeding solely because that party refuses to testify on the basis of the privilege against self-incrimination.'" *V.C.*, 2019 WL 1388725, at *2 n.3 (quoting *In re Verbois*, 10 S.W.3d 825, 829 (Tex. App.—Waco 2000, orig. proceeding)).

evidence demonstrated Mother had limited options for completing her service plan while incarcerated, Mother failed to demonstrate that she was committed to completing those services available to her while in jail. Mother's prior unwillingness to engage in services, Mother's discharge from the parenting course for non-compliance while in jail, and Mother's failure to complete any services available to her supports the trial court's endangerment finding. *See In re M.R.*, 243 S.W.3d 807, 819 (Tex. App.—Fort Worth 2007, no pet.) (upholding termination under subsections (D) and (E) because the evidence showed that the mother exposed her children to domestic violence, placed them in an environment of drug abuse, and refused to participate in her CPS service plan).

The evidence also demonstrated that while Mother was not incarcerated, she did not attempt to see Isaac. While Mother requested photos of Isaac, Mother did not attempt to set up any visits with him. Further, there was evidence that prior to incarceration, Mother's housing was unstable and that she was staying in hotels. Mother also testified regarding a prior incarceration wherein she "got clean," but, once home, she relapsed. Mother also invoked her Fifth Amendment right when asked about her prior criminal behavior in New Jersey.

Mother argues that her drug use was only "alleged" and not proven because there were no drug test results, medical records, or testimony from persons with knowledge. Much of the testimony regarding Mother and Isaac's drug test results was not objected to. There were no objections to the witness testimony or the admitted exhibits that demonstrated Mother's illegal drug use while pregnant with Isaac. Mother did not take any witnesses on voir dire to examine the basis for their testimony to determine whether the witness had personal knowledge. The only objections made were to exhibits 15 and 17 on the basis of relevance, as well as to

exhibits 17 and 18 on the basis of hearsay. All of these objections were overruled by the trial court.

On appeal, Mother argues that exhibit 19 is "clearly unverified hearsay" and should be excluded from the record. However, no objection was lodged to exhibit 19 at trial. Therefore, Mother has failed to preserve any argument regarding exhibit 19. *See* Tex. R. App. P. 33.1(a); *Austin v. Weems*, 337 S.W.3d 415, 421 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Mother also asserts that we should discount the testimony from the interventionist regarding Isaac's positive drug test at birth because there was a hearsay objection the trial court should have sustained. However, even if we were to agree with Mother that the trial court should have sustained this objection, there were no objections to the other evidence concerning Isaac's positive drug test at the time of his birth. Thus, even disregarding this one response from the interventionist, there is sufficient evidence that the trial court could have relied upon to support the conclusion that Mother exposed Isaac to illegal drugs while she was pregnant and that such drug use caused Isaac physical harm resulting in two weeks of treatment in the NICU.

Considering all the evidence in the light most favorable to the trial court's finding, we conclude a reasonable fact finder could form a firm belief or conviction that Mother knowingly placed the child in conditions which endangered his physical or emotional well-being and engaged in conduct which endangered the physical or emotional well-being of the child. *See In re A.C.*, 560 S.W.3d at 631. Considering the disputed evidence contrary to the findings against all of the evidence favoring the findings, we conclude that a reasonable fact finder could have resolved this evidence in favor of the above findings. *See id.* Therefore, we conclude that the evidence is legally and factually sufficient to support the trial court's findings under subsections (D) and (E). *See In re J.T.G.*, 121 S.W.3d 117, 125–28 (Tex. App.—

13

Fort Worth 2003, no pet.) (considering evidence of children's health complications caused by mother's drug use during pregnancy as conditions or surroundings that endangered the well-being of the children under (D) and (E)); *In re A.J.F.*, 2021 WL 423442, at *3 (concluding evidence was legally and factually sufficient to support subsection (D) finding where mother admitted to drug use while pregnant and baby tested positive for drugs at birth); *In re B.R.*, No. 02-11-00146-CV, 2011 WL 5515502, at *4 (Tex. App.—Fort Worth Nov. 10, 2011, no pet.) (mem. op.) (holding that evidence of mother's heroin use throughout pregnancy permitted fact finder to reasonably conclude mother "knowingly placed or knowingly allowed [child] to remain in conditions or surroundings that endangered his physical well-being while in the womb"); *see also In re J.E.*, No. 14-16-00850-CV, 2017 WL 1274081, at *5 (Tex. App.—Houston [14th Dist.] April 4, 2017, pet. denied) (mem. op.) ("A mother's drug use during pregnancy may amount to conduct that endangers the physical and emotional well-being of the child.").

Concluding that the evidence is legally and factually sufficient to support termination of Mother's parental rights under subsection (D) or (E), we overrule Mother's first and second issues. Because we conclude there is sufficient evidence to support one of the predicate findings, we need not address Mother's issues three, four, or five. *See In re F.M.E.A.F.*, 572 S.W.3d at 736; Tex. R. App. P. 47.1.

**BEST INTEREST OF THE CHILD**

In her final issue, Mother contends that the evidence is legally and factually insufficient to support the trial court's conclusion that termination of her parental rights is in Isaac's best interest.

## A.    General Legal Principles

There is a strong presumption that the best interest of a child is served by preserving the parent-child relationship. *In re F.M.E.A.F.*, 572 S.W.3d at 726.  In assessing whether the evidence is sufficient to prove that termination is in the best interest of a child, we may consider the non-excusive factors discussed in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).  The factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See F.M.E.A.F.*, 572 S.W.3d at 726 (citing *Holley*, 54 S.W.2d at 371–72).  We also consider the statutory factors in Section 263.307 of the Family Code, including the child's age and vulnerabilities. *See id.*  The best-interest analysis is child-centered and focuses on the child's well-being, safety, and development. *Id.* "[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct." *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009).

Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. Tex. Fam. Code § 101.007. This heightened burden of proof results in a heightened standard of review when evaluating the sufficiency of the evidence. *In re L.G.R.*, 498 S.W.3d at 202.

15

In a legal sufficiency review, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that the finding was true. *In re J.F.C.*, 96 S.W.3d at 266. We assume the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *Id.* We disregard all evidence that a reasonable fact finder could have disbelieved or found to have been incredible, but we do not disregard undisputed facts. *Id.*

In a factual sufficiency review, we also consider disputed and conflicting evidence. *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *see also In re A.C.*, 560 S.W.3d at 630–31. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d at 266.

## B.    Analysis

We review the *Holley* factors in considering whether the evidence is legally and factually sufficient to support the trial court's finding that terminating Mother's parental rights is in Isaac's best interest.

### (1) The child's desires

At the time of trial, Isaac was about eleven months old and could not voice his desires. *See In re A.C.*, 394 S.W.3d 633, 643 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("The young age of the child rendered consideration of the child's desires neutral."). There was evidence of the bond between Isaac and grandmother. Grandmother testified that Isaac had bonded with her and the rest of the household and his needs are being met. The evidence also demonstrated that Mother had not

visited Isaac since he was two weeks old. Even discounting the time that Mother was incarcerated, Mother did not visit Isaac for a period of four months. *See In re S.R.*, 452 S.W.3d 351, 369 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("When children are too young to express their desires, the fact finder may consider whether the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent.").

**(2) The child's present and future emotional and physical needs**

The evidence demonstrated that Isaac was in occupational therapy twice per month and visited with the interventionist at least once per month. The interventionist further recommended that Isaac see a neurologist to determine whether he had further medical issues. The evidence also showed that Isaac was developmentally delayed and needed additional help and support to meet his milestones. Grandmother testified that she takes Isaac to all of his appointments and is helping him to meet his milestones.

An advocacy supervisor testified that termination is in the best interest of Isaac because of Isaac's age and vulnerability due to his "extensive and immediate care needs" that are unable to be met by his parents. The evidence showed that Mother is not involved in caring for her other children, one of whom is already residing with grandmother. Grandmother has shown that she can provide for Isaac's needs. The supervisor testified that grandmother's home is safe, Isaac has his own room, and his basic needs are being met. Mother testified that it was her desire to obtain stable housing and employment once released but did not elaborate on any plans to do so. "Regarding this factor, we note that the need for permanence is a paramount consideration for the child's present and future physical and emotional needs." *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

17

Establishing a stable, permanent home for a child is a compelling government interest. *Id.*

### (3) Any present or future emotional and physical danger to the child

At the time of trial, Mother was still incarcerated awaiting trial. Evidence regarding endangerment in support of the trial court's finding under Section 161.001(1) is also probative of a finding as to danger in determining the child's best interest. *See Walker v. Tex. Dept. of Fam. & Protective Servs.*, 312 S.W.3d 608, 617, 619 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (considering past drug use by parent as indicative of whether the child may be endangered in the future because of "the possibility that the parent may be impaired or imprisoned"); *see also In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). The evidence also showed that Isaac is very young and still vulnerable. Isaac has health issues and needs constant care and supervision. The evidence showed that Mother was not engaged in her service plan, demonstrating a lack of concern for changing her behavior and attending to Isaac's needs.

### (4) Parental abilities of the individuals seeking custody

Grandmother testified that Isaac had been in her care for five months at the time of trial. Grandmother is Isaac's paternal grandmother and also is the caregiver of Isaac's older sister. The older sister is also a child of Mother and father and subject to a prior family case in New Jersey, though parental rights were not terminated in that case. Grandmother testified that Isaac had bonded with her, his older sister, and grandmother's life partner. Grandmother stays home with the children and takes Isaac to his appointments. Grandmother testified that she is willing to adopt Isaac and that her life partner is agreeable to that. Grandmother indicated that she had the financial means to take care of Isaac. Grandmother further

18

testified that she would be protective of Isaac and would determine whether it was in his best interest to have contact with his Mother and father.

The advocacy supervisor testified that grandmother has shown that she can provide for Isaac's needs. She testified that grandmother's home is safe, Isaac has his own room, and his basic needs are being met.

The evidence showed that Mother is not involved in parenting her other two children. *See Walker*, 312 S.W.3d at 617 ("Evidence as to how a parent has treated another child or spouse is relevant regarding whether a course of conduct . . . has been established."). Mother did not complete the parenting course and was discharged for non-compliance. Mother did not seek prenatal care and continued to use illegal drugs while pregnant. Mother did not engage in completing her plan or the services she was referred to by the Department. *See In re D.R.A.*, 374 S.W.3d at 534 (considering that father did not complete "significant" aspects of his service plan and only sporadically visited his child as evidence demonstrating a lack of parental ability).

**(5) Programs available to assist those seeking custody to promote the child's best interest**

Mother was offered various services through the Department and chose not to engage. *See Walker*, 312 S.W.3d at 620 (considering whether parent had engaged in service plan). Grandmother takes Isaac to his appointments and follows through with the recommendations of those providers. Grandmother and the advocacy supervisor testified that grandmother works with Isaac at home and is helping him to progress and meet his milestones.

**(6) Plans for the child by the individuals or agency seeking custody**

Grandmother testified that she is interested in adopting Isaac and her life partner was agreeable to the adoption. Grandmother further indicated that she wanted to be the one to make the decisions about what is best for Isaac, as opposed to his parents or anyone else. Grandmother intends to raise Isaac and his older sister together in her home.

**(7) Stability of the home or proposed placement**

At the time of trial, Mother was incarcerated and did not have a plan for housing or employment once she was released. Mother planned to obtain both housing and legal income upon her release but did not detail how she would do either in her testimony. Mother testified that prior to her incarceration she lived in various hotels and did not have stable housing.

The advocacy supervisor testified that the Department had completed a home study of grandmother's home and found it suitable for Isaac and approved his placement there. Grandmother testified that she stays home with the children and has income to support them.

**(8) Parent's acts or omissions which may indicate that the existing parent-child relationship is improper**

Mother's drug use during pregnancy and failure to obtain any prenatal care indicate an improper relationship and unwillingness to protect and care for Isaac. Mother's further failure to engage in services to regain custody over Isaac further support this conclusion.

**(9) Any excuse for the parent's acts or omissions**

No excuses were given for Mother's failures to engage in services prior to incarceration. Mother argues that she was not given enough time to complete her

20

service plan once it was given to her. Mother further argues that she did not understand all aspects of her plan—specifically whether she needed to obtain a psychological assessment. However, Mother's conduct of not engaging in services prior to her incarceration, not being involved in the lives of her other children, not visiting Isaac, and failing to engage in services at the time of trial support a conclusion that Mother was not willing to engage in any services to regain custody of Isaac.

While not all factors have substantial evidence supporting termination, a majority of the factors weigh in favor of termination. Viewing the evidence in the light most favorable to the judgment, we conclude that the evidence is legally sufficient to support the trial court's conclusion that termination of Mother's parental rights is in Isaac's best interest. Viewing all of the evidence equally, we conclude that a reasonable fact finder could have formed a firm belief or conviction that terminating Mother's parental rights is in Isaac's best interest.

We overrule Mother's final issue.

## CONCLUSION

Concluding there is legally and factually sufficient evidence to support the trial court's termination of Mother's parental rights, we affirm the trial court's final decree.


/s/     Ken Wise
         Justice

Panel consists of Chief Justice Christopher and Justices Wise and Hassan.